# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paulette Whitfield,                             :
                              Petitioner        :
                                                :
                    v.                          :    No. 608 C.D. 2017
                                                :    Argued:  March 7, 2018
Workers' Compensation Appeal                    :
Board (Tenet Health System                      :
Hahnemann LLC),                                 :
                              Respondent        :


BEFORE:      HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COHN JUBELIRER                    FILED:  June 6, 2018


In 2015, this Court held the impairment rating evaluation (IRE) provision found in Section 306(a.2) of the Workers' Compensation Act[1] (WC Act) was an unconstitutional delegation of legislative powers "insofar as it purports to adopt a new version of the American Medical Association's [(AMA)] *Guides to the Evaluation of Permanent Impairment* (*Guides*)" without review. *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 124 A.3d 406, 417 (Pa. Cmwlth. 2015) (*Protz I*).  As a result, in that case and cases that followed in which the issue was

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2.

properly preserved, we vacated decisions where the change in disability status had been based on IREs performed using the Fifth or subsequent editions of the *Guides* and remanded the matters for evaluation using the Fourth Edition of the *Guides*, which was in effect when Section 306(a.2) was enacted. Subsequently, upon review, the Pennsylvania Supreme Court affirmed our holding but reversed in one important respect: it found the offending language – "the most recent edition" of the *Guides* – could not be severed from the WC Act and instead declared the **entirety** of Section 306(a.2) unconstitutional. *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 840-41 (Pa. 2017) (*Protz II*). In the intervening time between *Protz I* and *Protz II*, a number of claimants whose disability status had been modified based on what are now considered unconstitutional IREs, such as Paulette Whitfield (Claimant), filed petitions seeking to have their status reinstated from partial disability to total disability.[2] At issue before us is whether Claimant is entitled to the benefit of *Protz II* when her disability status had been modified in 2008 and she had not challenged the constitutionality of the IRE upon which the modification was based for more than seven years. Because Claimant filed her Petition to Reinstate (Petition) within three years of the date of the most recent payment of compensation, we hold she has a statutory right to seek reinstatement under Section 413(a) of the WC Act, 77 P.S. § 772. Accordingly, we vacate the Order of the Workers' Compensation Appeal Board (Board) dated May 10, 2017, which affirmed the Decision and Order of the Workers' Compensation Judge (WCJ) denying Claimant's Petition. However, because the WCJ made no determination as to whether Claimant

---

[2] As discussed more fully herein, a change in status from total to partial disability under Section 306(a.2) did not alter the rate of compensation; rather, the practical effect was to limit the receipt of partial disability benefits to 500 weeks.

2

continues to be totally disabled, which is a prerequisite for reinstatement, we must remand for further proceedings.

## I.    Factual Background

The facts of this matter are not in dispute. Claimant worked as a respiratory therapist for Tenet Health System Hahnemann LLC (Employer). On March 25, 2002, she suffered a work injury that ultimately required her to undergo lower back surgery. From March 25, 2002, until September 28, 2002, Claimant received partial disability benefits for the time in which she performed alternative work. She began receiving temporary total disability benefits beginning September 29, 2002, the day of her surgery.

On June 13, 2006, Claimant underwent an IRE performed by Dr. Leonard Brody, using the Fifth Edition of the *Guides*. Dr. Brody concluded that Claimant had an impairment rating of 44 percent.[3] Based upon that IRE, a WCJ modified Claimant's disability status from total to partial disability as of the date of the IRE. The Board affirmed the modification by Order dated June 1, 2009. The parties stipulated that Claimant did not raise the constitutionality of the IRE before the original WCJ or the Board. Although Claimant's disability status was modified from total to partial, because she was not able to return to work following her surgery, Claimant received WC benefits at the total disability rate from September 29, 2002,

---

[3] Under Section 306(a.2)(2), a claimant with an impairment rating equal to or greater than 50 percent was presumed to be totally disabled, whereas a claimant with an impairment rating less than 50 percent was considered partially disabled. 77 P.S. § 511.2(2).

3

until mid-July 2015,[4] when she received her last WC payment. Claimant testified she continued to receive medical benefits.

On November 13, 2015, approximately one month after our decision in *Protz I*, Claimant filed her Petition seeking reinstatement to total disability based on that decision. Employer filed a timely Answer to the Petition on November 17, 2015, alleging reinstatement is not warranted for three reasons: (1) "*Protz* [*I*] ha[d] not been given retroactive effect"; (2) Claimant waived the constitutional issue; and (3) "[t]he law of the case doctrine prevents re-litigation of the change to partial disability status." (Answer, Reproduced Record (R.R.) at 9a.)

At hearings on the Petition, Claimant testified that she did not feel as though she had fully recovered from her injuries and that she had been unable to work at all from the time of her surgery through July 15, 2015. There was also evidence that Claimant was involved in a motor vehicle accident in May 2012, in which she injured

---

[4] There are varying dates in the record as to when Claimant's benefits ended. In her April 19, 2016 Decision, addressing the November 2015 reinstatement petition at issue in this case, the WCJ found Claimant was paid at the total disability rate until July 17, 2015. (WCJ Decision, Finding of Fact (FOF) ¶ 6c, Apr. 19, 2016, Reproduced Record (R.R.) at 39a.) Claimant testified at the hearing that the last date of payment was July 13, 2015. (Hr'g Tr., Nov. 18, 2015, at 7, R.R. at 17a.) The WCJ said at the hearing that the payment printout showed she was paid through July 13, 2015, but the date on the check was July 15, 2015. (*Id.* at 8, R.R. at 18a.) The July 15, 2015 date is what counsel also stipulated to as the last date of payment at the December 21, 2015 hearing. (Hr'g Tr., Dec. 21, 2015, at 6-7.) However, in an April 14, 2016 Decision, addressing separate reinstatement and penalty petitions filed in July 2015 by Claimant, the WCJ found Claimant was paid at the temporary total disability compensation rate until July 13, 2015, when Employer ceased payment. (WCJ Decision, FOF ¶ 3c, Apr. 14, 2016, R.R. at 31a.) The WCJ further found Claimant had not yet exhausted her 500 weeks of partial disability benefits at that time and ordered Employer to pay Claimant such benefits through August 19, 2015. (*Id.* ¶¶ 7-8, R.R. at 32a.) At oral argument, counsel for Claimant stated that those benefits for the weeks of July 13, 2015, through August 19, 2015, were actually received in April 2016, shortly after the WCJ issued the April 14, 2016 Decision. Because the date discrepancy does not impact our analysis in this case, we will simply refer to the date of last payment as occurring in the summer of 2015.

4

her head, neck, and upper back, but not her lower back. The parties stipulated many of the facts surrounding the IRE.

Following the hearings, the WCJ issued an Order denying Claimant's Petition. After recounting our holding in *Protz I*, the WCJ found that Claimant was not entitled to reinstatement of her benefits based upon *Protz I* for a number of reasons:

> a) in *Protz* [*I*], the Commonwealth Court did not expressly void all prior [IREs] or state that its decision applied retroactively; b) in Pennsylvania, generally only those matters that are pending in any phase of litigation, including appeal, or future matters are entitled to a benefit in the change of the law, and the litigation in the instant matter ended on June 1, 2009; [and] c) the constitutionality of Section 306(a.2) was not raised or preserved in the underlying litigation.

(WCJ Decision, Finding of Fact (FOF) ¶ 9, April 19, 2016, R.R. at 40a (footnote omitted).) The WCJ cited this Court's decision in *Winchilla v. Workers' Compensation Appeal Board (Nexstar Broadcasting)*, 126 A.3d 364 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 130 A.3d 1293 (Pa. 2015), for the proposition that Claimant waived the constitutionality argument by not raising it previously. (*Id.* ¶ 9 n.1.) Because of the WCJ's disposition, she did not make a finding regarding Claimant's credibility. (*Id.* ¶ 10.)

Claimant appealed. In a 4-3 decision, the Board affirmed. The majority found Claimant waived the right to challenge the constitutionality of the IRE. Citing *Riley v. Workers' Compensation Appeal Board (Commonwealth of Pennsylvania)*, 154 A.3d 396 (Pa. Cmwlth. 2016), the Board found Claimant did not challenge the constitutionality of the IRE before the WCJ or the Board when her change in status was first being litigated. (Board Opinion (Op.) at 3-4.) Furthermore, the Board noted that Claimant did not appeal the Board's June 1, 2009 order, in which the Board affirmed the original WCJ decision modifying her status to partial disability.

5

(*Id.* at 3.) The Board also explained that a claimant may appeal a change in status at any time during the 500-week period of partial disability so long as the claimant presents evidence of a revised impairment rating of at least 50 percent. (*Id.* at 4 (citing *Riley*, 154 A.3d at 400 n.5).) However, the Board held that Claimant was not entitled to a modification of her disability status because she failed to present such evidence. (*Id.*)

The Board dissent disagreed with the Board majority's conclusion that Claimant's change in disability status was final. The dissent distinguished *Riley*, noting in *Riley* the claimant attempted to challenge the IRE more than 500 weeks after the change in disability status, whereas Claimant here filed her petition within the 500-week period following her change in disability status.[5] (Board Dissenting Op. at 1.) Because Claimant's status was changed on June 13, 2006, and her Petition was filed on November 13, 2015, the dissent found she challenged the constitutionality within the 500-week period found in Section 306(a.2)(4); therefore, her case was not "final." (*Id.* at 2.)

The dissent further found that *Protz I* should be applied retroactively because it satisfied the criteria for retroactive application in *Blackwell v. State Ethics Commission*, 589 A.2d 1094 (Pa. 1991). (Board Dissenting Op. at 2.) The first

---

[5] While it is true that Claimant filed her Petition within 500 weeks of the **change in status**, which was June 13, 2006, the dissent then went on to cite Section 306(a.2)(4), which provides, in relevant part, that "[a]n employe may appeal the change to partial disability at any time **during the five-hundred week period of partial disability.**" 77 P.S. § 511.2(4) (emphasis added). Here, Claimant had already received 20 weeks and 6 days of partial disability benefits in 2002, leaving her with just 479 weeks, 1 day before her 500 weeks of partial disability benefits were exhausted. Although she did not actually receive payment on approximately four weeks of partial disability until April 2016, those benefits were for the period of July 13, 2015, through August 19, 2015. Therefore, Claimant exhausted her benefits in the summer of 2015 but did not file her Petition until November 2015. Thus, Claimant did not file her Petition "during the five-hundred week period of partial disability."

criterion is the purpose to be served by the new rule.  The dissent concluded that "applying *Protz* [*I*] retroactively to the instant case serves the important purpose of mandating conformity with the constitution."  (*Id.*)  Otherwise, "[a]llowing claimants to have their disability status, and ultimately have their benefits completely cut off, based upon an IRE that was based upon an unconstitutional section of the [WC] Act greatly prejudices those claimants and blocks the main purpose of the *Protz* [*I*] decision."  (*Id.*)  With regard to the second criterion – the extent of the reliance on the old rule – the dissent noted that "the IRE process is inherently not a final process, and remains an open case for 500 weeks past the time that a claimant's disability status is changed."  (*Id.*)  Because the *Guides* could change and claimants retain a right to challenge their status during this 500-week period, the dissent found "employers have never had full reliance that a change in a claimant's disability status to partial will be final as that change only becomes final once the 500[-]week period has expired."  (*Id.* at 2-3.)  In terms of the final criterion, which is the effect on the administration of justice by retroactive application of the new rule, the dissent found "there would be limited effect."  (*Id.* at 3.)  The dissent believed "there would be a more adverse effect on the administration of justice if *Protz* [*I*] was not retroactively applied to [cases in which the 500-week period had not expired], as these are not final cases."  (*Id.*)  If *Protz I* is not given retroactive effect, the dissent stated "it would lead to the absurdity that claimants would have the right to appeal IREs, but have no actual remedy to carry through on that appeal, as the right to appeal would be based upon a now unconstitutional section of the [WC] Act."  (*Id.*)

Claimant petitioned for review of the Board's Order.

## II.    **Analysis**

7

On appeal,[6] Claimant argues the *Protz* decisions apply and she is entitled to have her disability status restored from partial to total disability because the IRE upon which the change was based was unconstitutional and invalid. Claimant contends this case is "strikingly similar" to our recent decision in *Thompson v. Workers' Compensation Appeal Board (Exelon Corporation)*, 168 A.3d 408 (Pa. Cmwlth. 2017), in which we reversed the Board's affirmance of a WCJ's decision modifying a claimant's disability status from total to partial. (Claimant's Brief (Br.) at 8.) Claimant also argues that reinstatement petitions may be filed within three years of the date of last payment, which is satisfied here. (*Id.* at 9.)

In addition, Claimant argues justice and public policy require retroactive application of *Protz II*. Because *Protz II* struck the entirety of the IRE provision from the WC Act, Claimant asserts that injured employees no longer have a statutory remedy to seek a change in status, and "by eliminating the statutory process for an employee to challenge his or her IRE-based partial disability status, the [Supreme] Court could not have intended to bind forever claimants to a partial disability status that was unconstitutionally enacted." (*Id.* at 13.) Moreover, Claimant emphasizes the remedial nature of the WC Act and stresses it should be liberally construed in favor of injured workers. (*Id.* at 14.)

Employer argues that reinstatement is not warranted because, at the time *Protz II* was decided, "[C]laimant had already conclusively litigated the change in her benefit status, collected 104 weeks of temporary total disability benefits, and collected the entire[t]y of her 500 weeks of temporary partial disability benefits."

---

[6] This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

8

(Employer's Br. at 11.) Employer contends that employers have relied on these now-invalid IREs, which largely went unchallenged until the *Protz* decisions. Employer explains:

> [w]hile the statutory scheme set forth in Section 306(a.2) of the [WC] Act allowed a claimant to prove an entitlement to temporary total disability benefits at some point within the **future** of that 500 week period, presuming he/she was able to demonstrate a total person impairment of 50 [percent] or greater, the statute did not provide a claimant with 500 weeks within which to look back and invalidate a **past** IRE and the corresponding change in benefit status.

(*Id.* at 15 (emphasis in original).) Here, Employer argues that Claimant fully litigated her change in benefit status a decade ago but never challenged the constitutionality of the IRE provisions during that litigation. (*Id.* at 15-16, 18.) According to Employer, if the Court were to give retroactive effect to *Protz II*, the parties' expectation of finality would be upset. (*Id.* at 17.)

### A.    *Protz I* and *II*

Before we reach the merits of this appeal, it is important to understand the holdings that have gotten us to this point: *Protz I* and *Protz II*. Like this case, the facts in *Protz* were not in dispute. The claimant suffered a work injury in 2007. Although she returned to work for a short time, her "work injury recurred" and her benefits were reinstated. *Protz I*, 124 A.3d at 408. In October 2011, Claimant underwent an IRE performed by a physician using the Sixth Edition of the *Guides*. Based upon that IRE, the employer filed a modification petition, which the WCJ granted, converting the claimant's total disability benefits to partial disability benefits.

9

The claimant appealed to the Board and asserted that Section 306(a.2) of the WC Act was an unconstitutional delegation of legislative authority in violation of the Pennsylvania Constitution.[7] Section 306(a.2) provided, in pertinent part, that a claimant's impairment rating shall be determined "pursuant to the most recent edition of the [AMA *Guides*]." 77 P.S. § 511.2. At the time the section was added, the Fourth Edition of the *Guides* was in effect. Because the impairment rating for the same injury could vary between editions of the *Guides*, a claimant may be determined to be more or less impaired under one edition than another edition. The claimant in *Protz* argued that Section 306(a.2) effectively gave the AMA, rather than the General Assembly, authority to establish the criteria under which a claimant's disability status is determined.

On September 18, 2015, this Court rendered its decision in *Protz I*. We recognized that the General Assembly may delegate its legislative power but not without constraints. First, "the basic policy choices must be made by the Legislature," and second, the "legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions." *Protz I*, 124 A.3d at 413 (quotations omitted). With those principles in mind, we held that:

> the General Assembly [] failed to prescribe **any** intelligible standards to guide the AMA's determination regarding the methodology to be used in grading impairments. Section 306(a.2) of the [WC] Act is wholly devoid of any articulations of public policy governing the AMA in this regard and of adequate standards to guide and restrain the AMA's exercise of this delegated determination by which physicians and WCJs are bound. Indeed, Section 306(a.2) merely requires that the most recent version of the AMA *Guides* be used to determine a

---

[7] Article II, Section 1 of the Pennsylvania Constitution provides: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Pa. Const. art. II, § 1.

10

claimant's impairment rating. 77 P.S. § 511.2. Accordingly, under this basis alone, we find Section 306(a.2) of the [WC] Act unconstitutional.

*Protz I*, 124 A.3d at 415 (emphasis in original) (footnote omitted).

We also held that Section 306(a.2) is devoid of any "mechanism requiring governmental review of the *Guides* by the promulgation of regulations." *Id.* We found that at the time Section 306(a.2) was enacted, the General Assembly adopted the AMA's methodology contained in the Fourth Edition of the *Guides* as its own. *Id.* at 416. Subsequent editions of the *Guides*, however, were not reviewed, let alone re-adopted by the General Assembly. Nor did the General Assembly delegate review of the new editions to some administrative agency. Thus, we observed that "any form of review of subsequent editions of the AMA *Guides* is wholly absent, leaving unchecked discretion completely in the hands of a private entity." *Id.* In doing so, "[t]he legislature [] simply provided a private party—the AMA—with carte blanche authority to implement its own policies and standards, proactively adopted those standards, sight unseen." *Id.*

Having concluded that Section 306(a.2) was an unconstitutional delegation of legislative power because "it proactively approved versions of the AMA *Guides* beyond the Fourth Edition without review," we vacated the Board's decision and remanded the matter to the Board with instruction to remand to the WCJ for an IRE determination applying the **Fourth** Edition of the *Guides*. *Id.*

Both parties appealed our decision to the Pennsylvania Supreme Court. The employer argued we erred in concluding Section 306(a.2) was unconstitutional. The claimant argued we erred in remanding her case for application of the Fourth Edition of the *Guides* instead of striking down the offensive section in its entirety.

On appeal, the Pennsylvania Supreme Court, in a decision rendered June 20, 2017, agreed with our determination that Section 306(a.2) was an unconstitutional

11

delegation of legislative authority. It held "[b]y any objective measure, the authority delegated to the AMA in Section 306(a.2) of the [WC] Act is even more broad and unbridled" than in other nondelegation cases. *Protz II*, 161 A.3d at 835. The Supreme Court explained the various problems with Section 306(a.2):

> The General Assembly did not favor any particular policies relative to the *Guides*' methodology for grading impairments, nor did it prescribe any standards to guide and restrain the AMA's discretion to create such a methodology. Without any parameters cabining its authority, the AMA would be free to: (1) concoct a formula that yields impairment ratings which are so inflated that virtually every claimant would be deemed to be at least 50 [percent] impaired; or (2) draft a version of the *Guides* guaranteed to yield impa[ir]ment ratings so miniscule that almost no one who undergoes an IRE clears the 50 [percent] threshold; or (3) do anything in between those two extremes. The AMA could add new chapters to the *Guides*, or it could remove existing ones. It could even create distinct criteria to be applied only to claimants of a particular race, gender, or nationality.

> Consider also that the AMA could revise the *Guides* once every ten years or once every ten weeks. If the AMA chooses to publish new editions infrequently, Pennsylvania law may fail to account for recent medical advances. By contrast, excessive revisions would likely pose severe administrative headaches, inasmuch as the *Guides* automatically have the force and effect of law once published. As these hypotheticals illustrate, the General Assembly gave the AMA *de facto*, unfettered control over a formula that ultimately will determine whether a claimant's partial-disability benefits will cease after 500 weeks.

> Equally problematic, the General Assembly did not include in Section 306(a.2) any of the procedural mechanisms that this Court has considered essential to protect against "administrative arbitrariness and caprice." The General Assembly did not, for example, require that the AMA hold hearings, accept public comments, or explain the grounds for its methodology in a reasoned opinion, which then could be subject to judicial review. Further, the AMA physicians who author the *Guides* are, of course, not public employees who may be subject to discipline or removal.

*Id.* at 835-36 (internal footnotes and citations omitted).[8]

While the Supreme Court affirmed this Court to the extent it found Section 306(a.2) unconstitutional, it **reversed** as to the remedy. This Court had remanded the matter so that the claimant's impairment rating could be evaluated using the Fourth Edition of the *Guides*, which was the edition in effect at the time Section 306(a.2) was enacted. *Protz I*, 124 A.3d at 416. However, the Supreme Court held that the offending language requiring the use of the most recent version of the *Guides* for IRE determinations could not be severed from the WC Act. *Protz II*, 161 A.3d at 841. When the offending language was struck, the remainder of Section 306(a.2) was rendered "incomprehensible." *Id.* The Supreme Court found the *Guides* "provide[d] critical context to the statute's otherwise hollow phrases." *Id.* Because the offending language could not be severed from the WC Act, **the Court struck Section 306(a.2) in its entirety** from the WC Act.[9] *Id.*

### B. The Aftermath

Even before the Supreme Court struck down the entirety of Section 306(a.2) as unconstitutional, claimants, whose disability status had been modified from total to partial disability based upon an IRE performed using the Fifth or later edition of the *Guides,* filed various petitions seeking to have their status converted back to total disability based upon this Court's decision in *Protz I*. The WC bar sought to define exactly what *Protz I* meant. Counsel for claimants advocated for a broad, expansive

---

[8] In *Protz I*, this Court also expressed concern about delegating legislative authority to a private, nongovernmental party. 124 A.3d at 416. In *Protz II*, the Supreme Court did not adopt or reject this view, leaving the issue for another day. 161 A.3d at 837.

[9] A bill was introduced in November 2017 seeking to amend the IRE provision in response to *Protz II*. S.B. 963, 2017-18 Gen. Assem., Reg. Sess. (Pa. 2017). The bill was removed from consideration on March 26, 2018.

application, claiming that all IREs performed using any version other than the Fourth Edition of the *Guides* were void *ab initio*. Counsel for employers and insurers promoted a narrow construction.

As a result, this Court had a number of occasions to examine the parameters of *Protz I* before the Supreme Court issued *Protz II*.[10] First was *Winchilla*, which was argued seriately with *Protz I*. In *Winchilla*, the claimant's disability status was modified from total to partial based upon an IRE using the Sixth Edition of the *Guides*. The claimant there appealed to the Board, challenging the constitutionality of Section 306(a.2), but the Board affirmed, noting it could not decide constitutional issues. The claimant appealed to this Court and in his petition for review merely stated that "the IRE provisions . . . as applied to [the claimant] and/or facially, are unconstitutional, as they are capricious, arbitrary, not reasonably calculated, confiscatory, not used to assess disability in the [WC] sense, improperly disregard evidence that [the claimant] was totally disabled and improperly extinguish rights." *Winchilla*, 126 A.3d at 367 (quoting the claimant's petition for review ¶ 8). In his brief, the claimant expounded on that argument and argued specifically that Section 306(a.2) was an unconstitutional delegation of legislative authority. The employer argued the claimant waived that argument by failing to raise it in his petition for review. We agreed, finding the claimant did not cite Article II, Section 1 of the Pennsylvania Constitution or in any manner assert the IRE provisions were unconstitutional because they delegated legislative authority in his petition for review. *Id.* at 368. Rather, the claimant only made an "unspecified constitutional claim," which was insufficient to preserve this argument for appellate review under

_____

[10] The list of cases discussed herein is not exhaustive but is illustrative of our decisions post-*Protz I*.

14

Rule 1513(d) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1513(d).[11] *Id.* The WCJ and Board in the instant case cited *Winchilla* for support that the failure to raise the constitutionality of the IRE provisions before the WCJ or Board in the litigation over the validity of the IRE results in its waiver.

We next examined the effect of *Protz I* in *Riley*, the case primarily relied upon by the Board in its decision here. In *Riley*, the claimant's disability status was changed from total to partial disability after undergoing an IRE performed pursuant to the Fifth Edition of the *Guides*. The claimant subsequently sought to amend her Notice of Compensation Payable to include additional injuries, which the WCJ denied. While her appeal of that decision to the Board was pending, this Court issued its decision in *Protz I*, and the claimant filed a motion with the Board seeking to vacate the IRE, citing *Protz I*. The Board affirmed the WCJ's decision and found that the claimant failed to challenge the constitutionality of the IRE earlier and thus was precluded from doing so. On appeal to our Court, we found *Protz I* did not control disposition of *Riley*. We noted that in *Protz I*, the claimant appealed the IRE within 60 days, whereas in *Riley*, the claimant took nearly **10 years** to challenge the constitutionality of the IRE. *Riley*, 154 A.3d at 400. We held that under Section 306(a.2)(2) of the WC Act, a claimant has 60 days to appeal a reduction in disability

---

[11] As discussed in *Winchilla*, Rule 1513(d) was amended in December 2014, after the petitioner in that case filed his petition for review, to allow an appellate court to consider an issue, even if it was not raised in the petition, "if the court is able to address the issue based on the certified record." *Winchilla*, 126 A.3d at 368 n.6 (emphasis omitted) (quoting Pa.R.A.P. 1513(d)). The effect of the amendment was to soften the waiver provisions.

15

benefits.[12]  *Id.*  Because the claimant did not appeal within that time period, we determined she waived the ability to challenge the constitutionality of the IRE.[13]  *Id.*

We made no mention of the 60-day limit in Section 306(a.2)(2) in *Beasley v. Workers' Compensation Appeal Board (PECO Energy Company)*, 152 A.3d 391 (Pa. Cmwlth. 2016).  However, it was unnecessary to do so because, in that case, the appeal of the change in the claimant's status was pending at the time *Protz I* was decided.  There, the **employer** filed a petition to modify benefits based upon an IRE performed using the Sixth Edition of the *Guides*.  The WCJ denied the petition, and the employer appealed.  While the appeal was pending before the Board, *Protz I* was decided, and the claimant argued that the IRE physician's testimony was incompetent since it was based on the Sixth Edition of the *Guides*.  The Board refused to address the issue because the claimant had not previously appealed the WCJ's decision or challenged the constitutionality of the IRE.  The Board reversed on the merits of the employer's appeal, resulting in the claimant appealing the Board's order to our Court.  Although the claimant raised this Court's decision in *Protz I* for the first time on appeal to the Board, and not to the WCJ, we rejected an argument that the issue was not preserved, reasoning that the claimant raised it at the first opportunity.  *Id.* at 399.  Consistent with *Protz I*, the matter was remanded for a new IRE using the Fourth Edition of the *Guides*.  *Id.*

Last year, prior to *Protz II*, we again had occasion to examine the effect of *Protz I*.  In *Gillespie v. Workers' Compensation Appeal Board (Aker Philadelphia*

---

[12] Section 306(a.2)(2) provided, in pertinent part, that "no reduction shall be made until sixty days' notice of modification is given."  77 P.S. § 511.2(2).

[13] We also noted under Section 306(a.2)(4) of the WC Act that a claimant can challenge an IRE at any time during the 500-week statutory benefit period by introducing a new IRE showing an impairment rating of 50 percent or greater.  In *Riley*, however, the claimant did not present such evidence.  154 A.3d at 400 n.5.

*Shipyard)* (Pa. Cmwlth., No. 1633 C.D. 2016, filed May 17, 2017) (*Gillespie I*),[14] a claimant underwent an IRE in 2007 using the Fifth Edition of the *Guides* and had his disability status changed from total to partial. Eight years later, relying on *Protz I*, the claimant filed a reinstatement petition asserting the IRE was a nullity since it relied upon the Fifth Edition of the *Guides*. The WCJ granted the petition, but the Board reversed, explaining the claimant only had 60 days to challenge the IRE under Section 306(a.2)(2). We agreed, citing *Riley*, that *Protz I* did "not give [claimants] a second chance to appeal [an] IRE" after the 60-day period expired. *Gillespie*, slip op. at 7. We distinguished *Gillespie I* from *Mazuruk v. Workers' Compensation Appeal Board (Gillin and Sons Contracting, Inc.)* (Pa. Cmwlth., No. 1216 C.D. 2015, filed October 14, 2016), where we remanded the matter with instructions to allow the employer to have the claimant submit to a new IRE using the Fourth Edition of the *Guides*, consistent with our holding in *Protz I*. We explained the claimant in *Gillespie I* did not lodge a timely challenge as the claimant in *Mazuruk* did.[15] *Gillespie I*, slip op. at 7. Because the claimant did not challenge the IRE within 60 days as required by Section 306(a.2)(2), we found his subsequent challenge based on *Protz I* to be too late. *Id.*, slip op. at 8.

In January 2018, after *Protz II* was decided, the Supreme Court granted the claimant's petition for allowance of appeal in *Gillespie I*, vacated our order, and remanded that matter to this Court for a determination on whether *Protz II* applies retroactively, thereby rendering the claimant's IRE void *ab initio*.[16] *Gillespie v.*

---

[14] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, unreported panel decisions issued after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

[15] In *Mazuruk*, the claimant was in the process of appealing his 2012 IRE when we issued our decision in *Protz I*.

[16] The Supreme Court also stated that, on remand, this Court could consider any argument that the claimant's death made the matter nonjusticiable. *Gillespie II*, 179 A.3d at 451.

17

*Workers' Comp. Appeal Bd. (Aker Phila. Shipyard)*, 179 A.3d 451 (Pa. 2018) (*Gillespie II*).

This Court's decisions described above have one thing in common: they all predate *Protz II*, and so were decided **before** Section 306(a.2) was struck down as unconstitutional **in its entirety**. Thus, their reliance on the time requirements set forth in Section 306(a.2) establishing when an IRE must be challenged has been undermined.

One of the first cases we decided **after** the Supreme Court issued its decision in *Protz II* was *Thompson*, which was decided approximately two months later. In *Thompson*, the claimant's disability status was changed on August 30, 2005, from total to partial disability following an IRE performed using the Fifth Edition of the *Guides*. The parties were in the midst of litigating the merits of the earlier change in status based on the claimant's 2011 petition for review challenging the 2005 IRE when *Protz I* was decided. Although she had not challenged the constitutionality of the IRE before the WCJ or the Board, the claimant, in her petition for review to this Court, did.[17] The employer argued the claimant failed to timely raise the issue and should be barred from doing so on appeal. We rejected the employer's argument noting that "this matter began before *Protz I* and *Protz II* were decided," it implicated the validity of the statute, and the "[c]laimant raised this issue at the first opportunity to do so." *Thompson*, 168 A.3d at 412 n.4. We recognized that *Protz II* "essentially struck the entire IRE process from the [WC] Act" and reversed the Board's decision modifying the claimant's benefits from total to partial. *Id.* at 412-13.

---

[17] This was the claimant's second petition for review with this Court. In her first appeal, we vacated the Board's order and remanded for the Board to consider the merits of her appeal. *Thompson v. Workers' Comp. Appeal Bd. (Exelon Corp.)* (Pa. Cmwlth., No. 34 C.D. 2015, filed Jan. 29, 2016). It was in her petition for review of the Board's remand order that the claimant raised the constitutionality of the IRE under *Protz II*.

18

Shortly before argument in the instant case, we issued a decision in *Bradosky v. Workers' Compensation Appeal Board (Omnova Solutions, Inc.)* (Pa. Cmwlth., No. 1567 C.D. 2015, filed February 2, 2018). In *Bradosky*, the employer filed a modification petition alleging the claimant's status should be changed from total disability to partial disability based upon a 2012 IRE using the Sixth Edition of the *Guides*. The claimant, in his answer, challenged the constitutionality of the IRE process and continued to do so throughout the litigation before the WCJ, the Board, and our Court. The WCJ and the Board noted the claimant's continuing objections but found they did not have the authority to address constitutional issues. On appeal,[18] we reversed the Board's decision, which had affirmed the WCJ's modification of the claimant's benefits based on the IRE. We noted that the case was pending at the time *Protz II* was decided and the record was clear that the claimant challenged the constitutionality of the IRE provision throughout the litigation. *Bradosky*, slip op. at 7.

In summary, following *Protz I*, but before *Protz II*, this Court relied upon other subsections of Section 306(a.2), which required a claimant to challenge an IRE within a certain amount of time. If a claimant did not satisfy those statutory time requirements, we held he or she could not challenge the IRE. However, post-*Protz II*, those statutory time requirements were no longer valid and we allowed a claimant to raise the constitutionality of the IRE for the first time outside of those time periods, but while the litigation involving the change in status was still pending. *Thompson*, 168 A.3d at 412.

### C. Present Appeal

_____

[18] At the employer's request, our review of *Bradosky* was stayed pending disposition of *Protz II*.

Having summarized the development of the law, we turn to the merits of the instant appeal. Claimant argues she is entitled to reinstatement of her disability status from partial to total because she filed her reinstatement petition within three years after the date of her most recent payment of compensation, and the IRE upon which the modification of her disability status was based is invalid. She claims her case is most analogous to *Thompson* because she filed her reinstatement petition at the first available opportunity, just one month after our decision in *Protz I*. She also argues that *Protz* should be applied retroactively. Employer, however, argues against retroactive application, stressing that Claimant did not raise the constitutionality of the IRE at any time during the underlying litigation related to the IRE itself and she cannot do so now because it would upset Employer's reasonable expectation of finality.

In this case, Claimant filed a reinstatement petition, which is governed by Section 413(a) of the WC Act. That section, in relevant part, provides:

> A workers' compensation judge designated by the department may, at any time, modify, **reinstate**, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, **upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased**, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, [t]hat . . . no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department **within three years after the date of the most recent payment of compensation** made prior to the filing of such petition.

77 P.S. § 772 (emphasis added).

20

*In Cozzone ex rel. Cozzone v. Workers' Compensation Appeal Board (East Goshen Township)*, 73 A.3d 526, 536 (Pa. 2013), our Supreme Court explained that this section provides a claimant with three years from the date of last payment of compensation to petition for reinstatement. Here, it is undisputed that Claimant filed her Petition within three years after the date of the most recent compensation payment. Her last payment was received in mid-July 2015, just four months before she filed her Petition.

Thus, we examine whether "the disability of [Claimant] has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. § 772. We begin by noting that the term "disability" is a term of art in the workers' compensation context. Generally, "disability" is synonymous with loss of earning power resulting from a work-related injury. *Westmoreland Reg'l Hosp. v. Workers' Comp. Appeal Bd. (Stopa)*, 789 A.2d 413, 416 (Pa. Cmwlth. 2001). "Disability" may also refer to a **status**, which is linked to the rate or amount of compensation to which a claimant is entitled. Traditionally, this status was linked to a claimant's earning power. Under Section 306(b) of the WC Act, 77 P.S. § 512, an employer could modify a claimant's total disability benefits to partial disability by showing the claimant had earning power. Section 306(b)(2) provides:

> "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within the Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply.

21

> If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation.

77 P.S. § 512(2).

The addition of Section 306(a.2) to the WC Act in 1996 provided another method of changing a claimant's disability status from total to partial disability, but this time, **without regard** to any change in a claimant's earning power. Section 306(a.2)(1) provided:

> When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment[19] due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(1). Section 306(a.2)(2) provided that a claimant "shall be presumed to be **totally disabled**" if an IRE shows an **impairment rating**[20] equal to or greater than 50 percent, while if the impairment rating is less than 50 percent, the claimant is considered **partially disabled**. 77 P.S. § 511.2(2) (emphasis added). Under

---

[19] "Impairment" was defined as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." 77 P.S. § 511.2(8)(i).

[20] "Impairment rating" was defined as "the percentage of permanent impairment of the whole body resulting from the compensable injury." 77 P.S. § 511.2(8)(ii).

Section 306(a.2)(3), "the amount of compensation shall not be affected as a result of a change in disability status and shall remain the same." 77 P.S. § 511.2(3). In other words, a claimant considered partially disabled under Section 306(a.2) may still receive benefits at the total disability rate, which is sixty-six and two-thirds per centum of the injured worker's wages. Section 306(a)(1) of the WC Act, 77 P.S. § 511(1). The practical effect of a change in status from total to partial disability is to limit a claimant to 500 weeks of partial disability compensation. 77 P.S. § 512(1); *Diehl v. Workers' Comp. Appeal Bd. (I.A. Constr.)*, 972 A.2d 100, 104-05 (Pa. Cmwlth. 2009).

In *Diehl*, we discussed the distinction between a change in disability status under Section 306(b)(2), based upon a **change in earning power**, and one under Section 306(a.2), based upon **an impairment rating**. We explained that "IRE remedies are separate from remedies involving actual ability to work." *Diehl*, 972 A.2d at 108; *see also Sign Innovation v. Workers' Comp. Appeal Bd. (Ayers)*, 937 A.2d 623, 627-28 (Pa. Cmwlth. 2007); *Weismantle v. Workers' Comp. Appeal Bd. (Lucent Tech.)*, 926 A.2d 1236, 1240 (Pa. Cmwlth. 2007). This Court held that **earning power is not a factor** when seeking a change in disability status under Section 306(a.2). *Diehl*, 972 A.2d at 106. It explained that "requir[ing] proof both of a claimant's level of impairment and a claimant's earning power would render the IRE provisions meaningless" and that "there would be no reason for the employer ever to obtain an IRE." *Id.* at 108.

In summary, until the IRE provisions were struck down as unconstitutional, a claimant's disability status could be modified from total to partial disability in one of two ways: based upon evidence of earning power under Section 306(b)(2) **or** based upon a claimant's impairment rating, **without regard to his or her earning**

23

**power**, under Section 306(a.2). Because earning power did **not** play any role in Claimant's change from total to partial disability here, we discern no reason why the term "disability" in Section 413(a) governing reinstatement from partial to total disability in this case should be restricted to its traditional definition of earning power. *See, e.g.*, *Ford Motor/Visteon Sys. v. Workers' Comp. Appeal Bd. (Gerlach)*, 970 A.2d 517, 522-23 (Pa. Cmwlth. 2009) (reading Sections 306(a.2), 306(b), and 413(a) of the WC Act together and holding that an employer seeking modification to partial disability based upon an IRE is entitled to modification as of the date of the IRE). As the above case law demonstrates, disability can also be a **status**, where the claimant is either totally or partially disabled, as here, based upon impairment rating not earning power.

Next, we must consider whether Claimant's disability status "increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. § 772. Under the facts here, Claimant may establish entitlement to reinstatement if her disability status "recurred." "Recur" is defined, in relevant part, as "**to return to a** place or **status**" or "to happen, take, place, or appear again." Webster's Third New Int'l Dictionary 1900 (2002) (emphasis added). The legal effect of *Protz I* and subsequently *Protz II* was to render Claimant once again eligible for total disability benefits.[21] The impediment that rendered her partially disabled under the WC Act, *i.e.*, the **impairment rating**, is no longer a valid means of changing a claimant's status. There was no longer a legal basis for Claimant's disability status to remain partial because the IRE upon which the change in status was predicated was found, as a

---

[21] As discussed more fully below, the *Protz* decisions did not automatically revert Claimant's status back to totally disabled. Instead, Claimant must still show she is totally disabled after all this time to be entitled to reinstatement.

24

matter of law, unconstitutional and invalid. This change in the law was a basis upon which Claimant could seek reinstatement.

The current scenario is more akin to a claimant seeking reinstatement of benefits currently under suspension than one seeking reinstatement of benefits following termination because there is no allegation that Claimant's disability has ceased. The Supreme Court previously explained that suspension status "actually **acknowledges** a continuing medical injury." *Latta v. Workmen's Comp. Appeal Bd. (Latrobe Die Casting Co.)*, 642 A.2d 1083, 1085 (Pa. 1994) (emphasis in original). In situations where benefits were suspended, a claimant is only required to demonstrate that the reasons for the suspension no longer exist. *Pieper v. Ametek-Thermox Instruments Div.*, 584 A.2d 301, 304 (Pa. 1990). A claimant is not required to demonstrate with medical evidence that the work-related injury giving rise to the benefits continues; a claimant's testimony to that effect satisfies the claimant's burden of proof. *Latta*, 642 A.2d at 1085. Our Supreme Court has held that "once a claimant testifies that his prior work-related injury continues, the burden shifts to his employer to prove the contrary. Where an employer fails to present evidence to the contrary, the claimant's testimony, if believed by the [WCJ], is sufficient to support reinstatement." *Id.* The Supreme Court explained that because the claimant already established a work-related injury, it would be improper to require a claimant to establish it again. *Id.* "In such suspension situations, the causal connection between the original work-related injury and the disability which gave rise to compensation is **presumed**." *Pieper*, 584 A.2d at 305 (emphasis in original).

We also recognize that, generally, in order to be entitled to reinstatement to total disability after expiration of the 500 weeks of partial disability, a claimant must show (1) a loss of earning capacity, and (2) a worsening of the claimant's medical

25

condition.[22] *Stanek v. Worker's Comp. Appeal Bd. (Greenwich Collieries)*, 756 A.2d 661, 668 (Pa. 2000); *Kiser v. Workers' Comp. Appeal Bd. (Weleski Transfer, Inc.)*, 809 A.2d 1088, 1092-93 (Pa. Cmwlth. 2002). However, *Stanek* is distinguishable in that the claimant there did not have his status changed based upon an impairment rating; rather, the claimant there received partial disability benefits based upon a change in his earning power. In *Stanek*, after the claimant exhausted his 500 weeks of partial disability, he sought reinstatement on the basis that his physical condition had worsened, rendering him totally disabled. Thus, the standard enunciated by the Supreme Court, requiring evidence of a loss of earning power and a worsening of the claimant's physical condition, under these circumstances makes sense. However, for claimants whose change in disability status was never based on either a change in earning power or a change in physical condition, but solely on an impairment rating, it does not. It makes little sense to require a claimant seeking reinstatement based upon an unconstitutional IRE to show a change in earning power when the employer was not required to show the same when it had the claimant's disability status modified from total to partial. Furthermore, in some cases, a claimant will not be able show a **change** in earning power because his or her earning capacity remains at zero. Moreover, because the change in disability status was not linked to any change in physical condition, but only to an impairment rating, it does not make sense to require claimants to show their physical condition worsened.

Here, Claimant testified she was unable to work at all since the date of her surgery in 2002. (WCJ Decision, FOF ¶ 6d, Apr. 19, 2016, R.R. at 39a.) Employer

---

[22] A claimant seeking to reinstate total disability benefits prior to exhaustion of the 500-week period of partial disability benefits has a different burden of proof. That claimant must show that his or her earning power is again being adversely affected by his or her work injury; there is no requirement to show a worsening of one's physical condition. *Sladisky v. Workers' Comp. Appeal Bd. (Allegheny Ludlum Corp.)*, 44 A.3d 98, 102 (Pa. Cmwlth. 2012).

did not present any evidence to the contrary. Therefore, if Claimant's testimony is credited, this satisfies her burden. *Latta*, 642 A.2d at 1085. Here, however, the WCJ did not find it necessary to make any findings as to Claimant's credibility because of the WCJ's determination that *Protz I* was inapplicable. (WCJ Decision, FOF ¶ 10, Apr. 19, 2016, R.R. at 40a.) Therefore, we vacate the Board's Order and remand with direction to further remand to the WCJ to make factual findings related to whether Claimant credibly testified that she is totally disabled. If her testimony is credited, and because Employer presented no evidence to the contrary, *Latta*, 642 A.2d at 1085, Claimant is entitled to reinstatement as of the date she filed her Petition.

The approach set forth herein is consistent with the overall remedial purpose and humanitarian objective of the WC Act, which is intended to benefit the injured worker. *Griffiths v. Workers' Comp. Appeal Bd. (Seven Stars Farm, Inc.)*, 943 A.2d 242, 255 (Pa. 2008). Otherwise, it would appear that a claimant whose status was changed to the 500-week, limited period of partial disability based upon an unconstitutional IRE would have no other mechanism of reinstating his or her right to total disability benefits.[23] Furthermore, because a claimant either still receiving

_____

[23] Other mechanisms of challenging a change in status based upon an IRE were struck down by *Protz II*. For instance, the Board relied upon the 60-day limit found in Section 306(a.2)(2), which this Court also cited in *Riley* for the proposition that a claimant must challenge the IRE within 60 days. However, the Supreme Court in *Protz II* struck Section 306(a.2) of the WC Act as unconstitutional **in its entirety** after concluding the offending language in the IRE provisions could not be severed from the rest of the IRE provisions. Thus, after *Protz II*, Section 306(a.2)(2), which contains the 60-day time period for challenging the IRE, is no longer enforceable. Because this Court did not strike the entirety of Section 306(a.2) in *Protz I*, and *Riley* was decided in the period between this Court's decision in *Protz I* and the Supreme Court's decision in *Protz II*, at the time *Riley* was decided, the 60-day time period in Section 306(a.2)(2) appeared to be good law. However, after *Protz II*, that is not the case. Thus, any reliance on *Riley* and/or Section 306(a.2)(2) is error. For similar reasons, the Board dissent's reliance on the 500-

27

or recently receiving benefits may seek modification, so long as the petition is filed within three years of the date of the most recent payment of compensation, it does not upset an employer's expectation of finality. The WC Act clearly contemplates future modification as it provides a mechanism for claimants to seek such modification.

Both parties painted this case as an issue involving the retroactivity of *Protz II*. Given the facts of this case, however, the issue is not purely a question of retroactivity. We previously explained:

> A retroactive law has been defined as one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. . . . **A law is given retroactive effect when it is used to impose new legal burdens on a past transaction or occurrence.**

*Dep't of Labor and Indus., Bureau of Employment Sec. v. Pa. Eng'g Corp.*, 421 A.2d 521, 523 (Pa. Cmwlth. 1980) (emphasis added; internal citations omitted); *see also Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014) (requiring a decision to announce a new rule of law before it can be given retroactive effect); *Commonwealth v. Hughes*, 865 A.2d 761, 780 (Pa. 2004) (explaining a court decision is considered "new" for purposes of retroactivity if it imposes a new obligation on the parties). Our decision today does not impose any new legal consequences based upon a past transaction. Simply because *Protz II* is being applied to a case that arose from a work injury and a change in disability status that predates it does not mean it operates retroactively. *Warren v. Folk*, 886 A.2d 305, 308 (Pa. Super. 2005). It would be retroactive if it related back and gave a prior transaction a legal effect different from

week period in Section 306(a.2)(4) is misplaced. The value of our other decisions rendered pre-*Protz II*, such as *Gillespie*, is also diminished to the extent they rely on any part of Section 306(a.2).

28

that which it had under the law in effect at the time. *Id.* This decision does not alter Claimant's **past** status. Rather, it gives effect to the Claimant's status as it existed at the time she filed her reinstatement petition, which was filed within the statutory timeframe for filing such petitions.

## III. Conclusion

Because Claimant filed her Petition within three years from the date of her last payment of compensation as permitted by Section 413(a) of the WC Act, she was entitled, as a matter of law, to seek modification of her disability status based upon the *Protz* decisions, which found the IRE provision unconstitutional. Allowing Claimant to seek modification under these circumstances does not prejudice employers or insurers by upsetting their expectation of finality because such determinations are not yet truly "final" until three years have passed since the date of last payment.[24] However, in order to be entitled to reinstatement, a claimant must testify that her work-related injury continues, and the WCJ must credit that testimony over any evidence that an employer presents to the contrary. Here, Claimant testified she continues to be disabled by her work injury, but the WCJ did not make any credibility determinations, instead disposing of the case on the ground *Protz I* did not apply. Accordingly, we vacate the Board's Order and remand for further proceedings consistent with this opinion.

_____
**RENÉE COHN JUBELIRER,** Judge

_____

[24] We do not resolve whether *Protz II* would apply to cases in which the last payment made was outside the 3-year period in Section 413(a).

29

Judge Covey dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paulette Whitfield,                          :
                      Petitioner          :
                                   :
                v.                          :          No. 608 C.D. 2017
                                   :
Workers' Compensation Appeal          :
Board (Tenet Health System          :
Hahnemann LLC),                          :
                     Respondent          :

# **O R D E R**

NOW, June 6, 2018, the Order of the Workers' Compensation Appeal Board dated May 10, 2017, is **VACATED**, and this matter is **REMANDED** for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

 

_____
**RENÉE COHN JUBELIRER,** Judge