# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Extended Healthcare Services, Inc.,     :
                   Petitioner     :
                           :
          v.                  :
                           :
Workers' Compensation Appeal     :
Board (Perillo),                :     No. 620 C.D. 2020
              Respondent    :     Submitted: November 20, 2020

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED: March 3, 2021

       Extended Healthcare Services, Inc. (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) June 10, 2020 order affirming Workers' Compensation Judge Joseph Sebastianelli's (WCJ Sebastianelli) decision granting Jacqueline Perillo's (Claimant) petitions to modify Claimant's WC benefits from partial to total disability and to reinstate Claimant's WC benefits to total disability (collectively, Petitions), finding that Claimant was entitled to reinstatement of her total disability WC benefits as of March 2, 2018, the date she filed the Petitions. Employer presents one issue for this Court's review: whether the Board erred by affirming WCJ Sebastianelli's reinstatement of Claimant's total disability benefits and by failing to maintain Claimant's partial disability benefits under the October 4, 2011 impairment rating evaluation (IRE), as

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

required by the Act of October 24, 2018, P.L. 714 (Act 111), which was enacted during the litigation before WCJ Sebastianelli. After review, this Court affirms.

On October 9, 2003, Claimant sustained a compensable work-related injury for which she received temporary total disability (TTD) benefits. Thereafter, Employer filed a modification petition based upon an IRE performed on October 4, 2011, which WCJ Mark A. Peleak (WCJ Peleak) granted on July 16, 2012, reducing Claimant's WC benefits to partial disability, effective October 4, 2011. On March 2, 2018, Claimant filed the Petitions alleging that her total disability benefits should be reinstated because the IRE process was deemed unconstitutional pursuant to *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*). Therein, Claimant sought reinstatement of her TTD benefits retroactive to her October 4, 2011 IRE date. On July 29, 2019, WCJ Sebastianelli granted Claimant's Petitions, but reinstated Claimant's WC benefits to TTD effective March 2, 2018, the date she filed the Petitions. Employer and Claimant appealed to the Board. On June 10, 2020, the Board affirmed WCJ Sebastianelli's decision. Employer appealed to this Court.[2,3]

Employer argues that Act 111 requires an ongoing modification to partial disability status under the October 4, 2011 IRE because Act 111, in large part, reinstates the previous IRE provisions contained in former Section 306(a.2) of the WC Act (Act),[4] with two substantial changes. First, Employer asserts that, rather

[2] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

[3] Claimant also appealed to this Court. *See Perillo v. Workers' Comp. Appeal Bd. (Extended Healthcare Servs., Inc. & State Workers' Ins. Fund)* (Pa. Cmwlth. No. 649 C.D. 2020, filed March 3, 2021).

[4] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by Section 1 of Act 111, effective October 24, 2018.

2

than providing for the performance of an IRE under the "most recent edition of the American Medical Association Guides to Evaluation of Permanent Impairment [(AMA Guides)]," Act 111 specifically incorporated and adopted the use of the AMA Guides, 6th edition, second printing April 2009 (second printing), for performing IREs. Second, Employer declares that Act 111 reduced the threshold for total disability status from 50% to 35%, as calculated under the AMA Guides, 6th edition, second printing. *See* Section 306(a.3)(1), (2) of the Act, 77 P.S. § 511.3(1), (2).[5]

Employer further contends that the Act 111 amendments provide a credit for weeks of total disability benefits paid before Act 111's effective date, and for weeks of partial disability benefits paid before Act 111's effective date. *See former* 77 P.S. § 511.2(2). Employer claims that it is not only entitled to a credit for total disability benefits paid before the enactment of Act 111 and before the October 4, 2011 IRE, but because the IRE was performed under the AMA Guides, 6th edition, second printing, and resulted in an impairment rating of less than 35%, Claimant's benefits must be modified to partial disability based upon the October 4, 2011 IRE, since that IRE comported and complied with Act 111. Employer maintains that the October 4, 2011 IRE was unaffected by any subsequent change in the law because it was a medical determination.

Claimant rejoins that Act 111, which established the IRE process to be used effective October 24, 2018, does not allow a retroactive modification as of the date of the prior constitutionally invalid IRE. Claimant contends that because Act 111's provisions were enacted after her right to WC benefits was established, it should not apply to her.

---

[5] Added by Section 1 of Act 111.

Former Section 306(a.2) of the Act provided, in relevant part:

(1) When an employe has received total disability compensation pursuant to clause (a) for a period of [104] weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within [60] days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury, if any. **The degree of impairment shall be determined** based upon an evaluation by a physician . . . **pursuant to the most recent edition of the** [**AMA 'Guides'**].

(2) If such determination results in an impairment rating that meets a threshold impairment rating that **is equal to or greater than** [**50%**] **impairment under the most recent edition of the** [**AMA 'Guides,'**] **the employe shall be presumed to be totally disabled** and shall continue to receive total disability compensation benefits . . . . If such determination results **in an impairment rating** less **than** [**50%**] **impairment under the most recent edition of the** [**AMA 'Guides,'**] **the employe shall then receive partial disability benefits** . . . : Provided, however, That no reduction shall be made until [60] days' notice of modification is given.

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power . . . , the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed.

(4) An employe may appeal the change to partial disability at any time during the [500]-week period of partial disability[:] Provided, That there is a determination that the employe meets the threshold impairment rating that **is equal to or greater than** [**50%**] **impairment under the most recent edition of the** [**AMA 'Guides.'**]

(5) Total disability shall continue until it is adjudicated or agreed . . . that total disability has ceased or the employe's condition improves **to an impairment rating that is less**

4

**than [50%] of the degree of impairment defined under the most recent edition of the [AMA 'Guides.']**

(6) Upon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of [S]ection 314 [of the Act, 77 P.S. § 651,] to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than [2] independent medical examinations under this clause during a [12]-month period.

(7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating that **is equal to or greater than [50%] impairment under the most recent edition of the [AMA 'Guides']** for any injury or recurrence thereof.

*Former* 77 P.S. § 511.2 (emphasis added); *see also Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 124 A.3d 406, 409 n.3 (Pa. Cmwlth. 2015) (*Protz I*).

Act 111 replaced former Section 306(a.2) of the Act with Section 306(a.3) of the Act, which declares, in pertinent part:

(1) When an employe has received total disability compensation . . . for a period of [104] weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within [60] days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury, if any. **The degree of impairment shall be determined** based upon an evaluation by a physician . . . **pursuant to the [AMA 'Guides,'] 6th edition ([second printing]).**

(2) If such determination results in an impairment rating that meets a threshold impairment rating that **is equal to or greater than [35%] impairment under the [AMA 'Guides,'] 6th edition ([second printing]), the employe shall be presumed to be totally disabled** and shall

5

continue to receive total disability compensation benefits . . . . If such determination results **in an impairment rating less than [35%] impairment under the [AMA 'Guides,'] 6th edition ([second printing]), the employe shall then receive partial disability benefits** . . . : Provided, however, That no reduction shall be made until [60] days' notice of modification is given.

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power . . . , the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed.

(4) An employe may appeal the change to partial disability at any time during the [500]-week period of partial disability[:] Provided, That there is a determination that the employe meets the threshold impairment rating **that is equal to or greater than [35%] impairment under the [AMA 'Guides,'] 6th edition ([second printing]).**

(5) Total disability shall continue until it is adjudicated or agreed . . . that total disability has ceased or the employe's condition improves to an impairment rating **that is less than [35%] of the degree of impairment defined under the [AMA 'Guides,'] 6th edition ([second printing]).**

(6) Upon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of [S]ection 314 [of the Act] to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than [2] independent medical examinations under this clause during a [12]-month period.

(7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating **that is equal to or greater than [35%] impairment**

6

**under the [AMA 'Guides,'] 6th edition ([second printing]**, for any injury or recurrence thereof.

77 P.S. § 511.3 (emphasis added).

In *Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020), this Court rejected an argument similar to that made by Employer herein. The *Rose Corporation* Court explained:

> While it is true that Section 306(a.3) [of the Act] essentially reenacted the IRE provisions, importantly, Section 306(a.3) [of the Act] did not take effect until it was enacted on October 24, 2018. Therefore, until that time, [**the e]mployer could not utilize an IRE to change [the c]laimant's disability status, even if the IRE otherwise complied with the later enacted requirements of Section 306(a.3)(1) [of the Act]** because no law permitted [the e]mployer to utilize an IRE process until Act 111 was enacted. **There is no provision in Act 111 which specifically or implicitly provides for an IRE performed prior to Section 306(a.3) [of the Act]'s enactment to be validated afterward**. Arguably, this would undermine the invalidation of IREs by the Supreme Court in *Protz II*, whereas the approach set forth herein gives effect to the statutory language while upholding the legislative balance of claimants' and employers'/insurers' interests in light of *Protz II* and Act 111.

*Rose Corp.*, 238 A.3d at 563-64 (emphasis added; footnote and emphasis omitted).[6]

---

[6] The Dissent states: "The result in the instant case and the one in *Rose Corporation* line up with *Whitfield* [*v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*], 188 A.3d 599 [(Pa. Cmwlth. 2018)], which make the date of the reinstatement petition, not the manner by which the IRE was conducted or its result, dispositive of all questions." *Extended Healthcare Servs., Inc. v. Workers' Comp. Appeal Bd. (Perillo)* (Pa. Cmwlth. No. 620 C.D. 2020, filed March 3, 2021) (Leavitt, P.J. dissenting), slip op. at 4. However, while the Majority lines up with *Whitfield*, the Majority relies on *Rose Corporation*, not *Whitfield*; and *Rose Corporation* merely stated that it was consistent with *Whitfield*. Further, *Rose Corporation* extensively analyzed Act 111 before making the above-quoted conclusion.

7

Employer attempts to distinguish *Rose Corporation* by arguing that, in the instant case, WCJ Sebastianelli's decision changing Claimant's disability status was not issued until July 29, 2019, well after Act 111 was signed into law on October 24, 2018. Employer posits that, because Claimant's disability status had not changed as of the time Act 111 became effective, Employer is permitted an ongoing modification of Claimant's WC benefits to partial disability pursuant to the October 4, 2011 IRE, because Claimant's right to a reinstatement of total disability benefits remained at issue and reinstatement had not been granted when Act 111 became law.

However, Employer utilized an IRE to modify Claimant's status to partial disability in July 2012 that *Protz II* invalidated. Therefore, because "[t]here is no provision in Act 111 which specifically or implicitly provides for an IRE performed **prior to** Section 306(a.3) [of the Act]'s enactment to be validated afterward[,]" Employer cannot be permitted an ongoing modification to partial disability status under the October 4, 2011 IRE. *Rose Corp.*, 238 A.3d at 563 (emphasis added). "Here, the Board's conclusion that Claimant was entitled to reinstatement of total disability benefits as of the date Claimant filed the Petition[s] is consistent with Act 111, the [] Act, and precedent. Accordingly, we affirm." *Rose Corp.*, 238 A.3d at 564.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Extended Healthcare Services, Inc., :
        Petitioner :
            :
     v. :
            :
Workers' Compensation Appeal :
Board (Perillo), :  No. 620 C.D. 2020
       Respondent :

## O R D E R

   AND NOW, this 3rd day of March, 2021, the Workers' Compensation Appeal Board's June 10, 2020 order is affirmed.


         _____
         ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Extended Healthcare Services, Inc., :
                               Petitioner :
                                :
                  v. : No. 620 C.D. 2020
                                : Submitted: November 20, 2020
Workers' Compensation Appeal Board :
(Perillo), :
                      Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                FILED: March 3, 2021

          Respectfully, I dissent.

          The majority reinstates Jacqueline Perillo (Claimant) to total disability status as of March 2, 2018, the date on which she filed her reinstatement petition. I agree that this holding comports with *Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020), and *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018). I now believe, however, that *Rose Corporation* was wrongly decided because it gave no effect to Act 111,[1] which was enacted after *Whitfield*.

---

[1] Act of October 24, 2018, P.L. 714, No. 111 (Act 111). Because the Supreme Court did not address Section 3(2) of Act 111 in *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, 232 A.3d 629 (Pa. 2020), that case is not dispositive of the issue raised in *Rose Corporation*.

Claimant's impairment rating evaluation (IRE) was conducted on October 4, 2011, under the Sixth Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (AMA Guides) and yielded an impairment rating of 1%. Reproduced Record at 2a, 7a. This IRE resulted in a change in Claimant's disability status from total to partial. Because this IRE was conducted in accordance with Act 111's IRE standards and yielded an impairment rating of less than 35%, Claimant may not be entitled to be reinstated to total disability.[2] Stated otherwise, Act 111 would entitle Extended Healthcare Services, Inc. (Employer) to claim credit for all weeks of partial disability paid to Claimant after October 4, 2011, to the present.

Section 3(2) of Act 111 states that "an insurer shall be given credit for weeks of partial disability compensation *paid prior to the effective date of this paragraph.*"[3] Act 111, §3(2) (emphasis added). This lookback provision, together

---

[2] Section 306(a.3)(2) of the Workers' Compensation Act provides in pertinent part:

> If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than thirty-five per centum impairment under the [AMA] "Guides to the Evaluation of Permanent Impairment," *6th edition* (*second printing April 2009*), the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impairment rating less than thirty-five per centum impairment under the [AMA] "Guides to the Evaluation of Permanent Impairment," 6th edition (*second printing April 2009*), the employe shall then receive partial disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act 111, 77 P.S. §511.3(2) (emphasis added). Here, although Claimant's 2011 IRE was conducted under the Sixth Edition of the AMA Guides, it is unclear from the record if the IRE was conducted using the *second printing* of the Sixth Edition of the AMA Guides.

[3] Section 3(2) of Act 111 states:

> (2) For the purposes of determining the total number of weeks of partial disability compensation payable under section 306(a.3)(7) of the [Workers' Compensation

MHL-2

with Act 111's immediate effective date, expressed an intention by the General Assembly to authorize the use of an IRE that conforms to Act 111's standards to determine a claimant's disability status, even if the IRE was done before the passage of Act 111. Accordingly, this Court erred when it stated as follows:

> There is no provision in Act 111 which specifically or implicitly provides for an IRE performed **prior** to Section 306(a.3) [of Act 111]'s enactment to be validated afterward.

*Rose Corporation*, 238 A.3d at 563 (emphasis in original). To the contrary, that provision is found in Section 3(2) of Act 111.

Effectively, under *Rose Corporation*, an employer will receive credit for pre-Act 111 partial disability payments made to a claimant up to the date of the claimant's reinstatement petition regardless of what the pre-Act 111 IRE showed or how it was conducted. This is at odds with the language of Act 111. Only where the pre-Act 111 IRE has been conducted under the Sixth Edition (second printing) of the AMA Guides and yielded an impairment rating of less than 35%, *i.e.*, one that satisfied Act 111's standards, may the employer receive credit for partial disability payments made "prior to the effective date" of Act 111. *See* Section 3(2) of Act 111. This construction gives effect to all the provisions of Act 111.[4]

---

> Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Act of October 24, 2018, P.L. 714, 77 P.S. §511.3(7)], *an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph.*

Act 111, §3(2) (emphasis added).

[4] Conversely, Act 111 does not authorize credit for pre-Act 111 payments made on the basis of an IRE that showed an impairment rating of more than 35% but less than 50%, as was permitted under the law prior to Act 111. In that instance, the claimant is entitled to reinstatement to total disability as of the date of the pre-Act 111 IRE. This reinstatement is not automatic; it requires the timely filing of a reinstatement petition. *Whitfield,* 188 A.3d at 617.

The result in the instant case and the one in *Rose Corporation* line up with *Whitfield*, 188 A.3d 599, which make the date of the reinstatement petition, not the manner by which the IRE was conducted or its result, dispositive of all questions.[5] It is as if Act 111 was never enacted. Section 3(2) of Act 111 has been rendered mere surplusage, which violates the clear directive of our Supreme Court on how we construe statutes. *Holland v. Marcy*, 883 A.2d 449, 456 (Pa. 2005) ("courts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage").

I would reverse the Board.

_____
MARY HANNAH LEAVITT, President Judge

_____

[5] In *Rose Corporation*, the Workers' Compensation Appeal Board (Board) relied solely upon *Whitfield*, 188 A.3d 599, to hold that the claimant was entitled to reinstatement as of the date the reinstatement petition was filed. The Board in *Rose Corporation* did not address the IRE standards of Act 111, which were in effect and made the claimant ineligible for reinstatement because his IRE was conducted under the Sixth Edition of the AMA Guides and showed an impairment less than 35%. Here, by contrast, the Board addressed Act 111. However, the Board held Act 111 irrelevant, asserting that Act 111 applies only where an IRE is done after Act 111's effective date. The Board has not explained how an employer can get credit for payments made prior to Act 111 based on an IRE done after Act 111's passage. Stated otherwise, the Board gives no effect to Section 3(2) of Act 111.

MHL-4