IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                              :
               Petitioner          :
                                :     No.  1804 C.D. 2019
            v.                         :
                                :     Submitted:  September 4, 2020
Workers' Compensation Appeal          :
Board (Donovan),                            :
               Respondent          :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH                            FILED:  April 22, 2021


      The City of Pittsburgh (Employer) petitions for review of the October 21, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of Workers' Compensation Judge (WCJ) Steven Minnich to grant the Modification Petition and Petition to Review Compensation Benefits (Review Petition) filed by Kenneth Donovan (Claimant), and to reinstate Claimant's total disability status as of November 13, 2017.

      This appeal arises in the context of a series of related decisions of this Court concerning the contours of the Pennsylvania Workers' Compensation Act (Act

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

or Workers' Compensation Act)[2] in the wake of our holding in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015) (*en banc*) (*Protz I*), and our Supreme Court's decision to strike the entirety of section 306(a.2)[3] of the Act as unconstitutional in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*). Also relevant to this appeal are the precedents that have emerged in light of our legislature's response via Act 111 in 2018, and its addition of section 306(a.3) of the Act, 77 P.S. §511.3. Because recent holdings of this Court support the Board's decision in all respects, we affirm.

## Background

The material facts, as found by the WCJ and summarized by the Board, are not in dispute. Claimant worked for Employer as a career firefighter. On July 24, 2010, Claimant sustained a work-related injury to both of his shoulders. Employer issued a Notice of Compensation Payable, acknowledging Claimant's total disability status and that he would receive benefits concurrently under the Workers' Compensation Act and the Act commonly known as the Heart and Lung Act.[4] (Reproduced Record (R.R.) at 61a-62a.)

On January 25, 2013, Claimant underwent an impairment rating evaluation (IRE) pursuant to former section 306(a.2) of the Act, conducted by Dr. M. Bud Lateef. In accordance with the Act as it then provided, Dr. Lateef utilized the

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1, 2501-2710.

[3] *Former* 77 P.S. §511.2, added by the Act of June 24, 1996, P.L. 350, and repealed by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111).

[4] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-38.

2

Sixth Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (*Guides*). Dr. Lateef determined Claimant had a 15% whole person impairment.[5] (R.R. at 116a-17a.) As this was below the 50% impairment necessary for a presumption of total disability status under former section 306(a.2)(2), Claimant and Employer stipulated that Claimant's disability status would be changed from total to partial effective January 25, 2013.[6] The parties' stipulation was approved by WCJ Linda Tobin on October 7, 2013.

In 2015, this Court issued our decision in *Protz I*, wherein we held that the IRE provision of former section 306(a.2) of the Act was an unconstitutional delegation of legislative power, inasmuch as it purported to adopt new versions of the *Guides* without legislative review. *Protz I*, 124 A.3d at 417. On June 20, 2017, the Pennsylvania Supreme Court affirmed our ruling with regard to nondelegation, but further concluded that the offending language—"the most recent edition" of the *Guides*—could not be severed from the Act, rendering the entirety of former section 306(a.2) unconstitutional. *Protz II*, 161 A.3d at 840-41. In response to *Protz II*, the General Assembly ultimately added section 306(a.3) to the Workers' Compensation Act, via Act 111, which specifies that IREs are to be conducted "pursuant to the American Medical Association 'Guides to the Evaluation of Permanent Impairment,'

---

[5] The term "impairment" was defined by former section 306(a.2)(8)(i) and continues to be defined in section 306(a.3)(8)(i) as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." *Former* 77 P.S. §511.2(8)(i); 77 P.S. §511.3(8)(i). The definition of "impairment rating," also unchanged in the current version of the Act, is "the percentage of permanent impairment of the whole body resulting from the compensable injury. The percentage rating for impairment . . . shall represent only the impairment that is the result of the compensable injury and not for any preexisting work-related or nonwork-related impairment." *Former* 77 P.S. §511.2(8)(ii); 77 P.S. §511.3(8)(ii).

[6] Section 306(b)(1) of the Act, 77 P.S. §512(1), limits a claimant's receipt of partial disability benefits to 500 weeks.

3

6th edition (second printing April 2009)" (Sixth Edition of the *Guides*).[7] Section 306(a.3)(1) of the Act, 77 P.S. §511.3(1).

On November 13, 2017, following our Supreme Court's decision in *Protz II*, and before Claimant's 500 weeks of partial disability benefits had expired, Claimant filed the instant Modification and Review Petitions. Claimant contended his impairment rating, which was ascertained pursuant to the Sixth Edition of the *Guides*, was invalid under *Protz II*. Claimant sought reinstatement of his total disability status.

WCJ Minnich held a hearing on Claimant's Petitions on August 23, 2018. In support of his position, Claimant testified that, despite undergoing surgery on both of his shoulders and receiving physical therapy, his symptoms had worsened over time. (Notes of Testimony, 8/23/2018 (N.T.), at 11-14; R.R. at 34a-37a.) Specifically, Claimant testified that he continues to suffer from a loss of strength, an increase in pain, and an inability to lift objects above his head. (N.T. at 14-16; R.R. at 37a-39a.) Claimant explained that he had a job doing light-duty cleaning of condominium units for a period of two years, but he had to stop because of his shoulder problems. (N.T. at 18-19; R.R. at 41a-42a.) Claimant additionally testified that he had attempted to find a job he could perform despite his medical restrictions, but had not received any offers. (N.T. at 22-24; R.R. at 45a-47a.) In order for Employer to defend against Claimant's petitions, WCJ Minnich permitted Employer to obtain an independent medical examination (IME) of Claimant to assess the status of his injury; however, he did not allow Employer to develop vocational evidence relating to Claimant's earning power.

---

[7] We note that, although WCJ Minnich and the Board stated that Claimant's 2013 IRE was conducted pursuant to the Sixth Edition of the *Guides*, they did not specify whether Dr. Lateef used the "second printing April 2009." Section 306(a.3)(1) of the Act, 77 P.S. §511.3(1). For the reasons discussed below, this is not dispositive of Employer's appeal. For the sake of clarity, unless otherwise specified, usages herein of the "Sixth Edition of the *Guides*" shall refer to the second printing April 2009, as identified in Act 111.

4

By a decision and order circulated on May 14, 2019, WCJ Minnich granted Claimant's Modification and Review Petitions. The WCJ found Claimant's testimony credible and determined that his work-related disability continued. (WCJ Decision at 4; R.R. at 77a.) The WCJ noted that Claimant's "description of his ongoing disability was not rebutted, or sharply challenged." *Id.* The WCJ concluded that Claimant thus met his burden to establish "disability" as required by this Court's intervening decision in *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018) (*en banc*). The WCJ accordingly reinstated Claimant's total disability status effective November 13, 2017—the date Claimant filed his Petitions. The WCJ further rejected Employer's argument that Claimant's 2013 IRE remains in effect under Act 111, and that his 15% impairment rating under that IRE renders him ineligible for total disability status. The WCJ reasoned that the 2013 IRE was conducted under former section 306(a.2) of the Act, which was held unconstitutional in *Protz II* and subsequently repealed. (WCJ Decision at 4; R.R. at 78a.) Moreover, because Act 111 provided for retroactive consideration of earlier periods of total disability in some contexts but did not provide for retroactive effect of IREs conducted under the prior unconstitutional scheme, the WCJ found no basis to give Claimant's 2013 IRE continuing legal effect. *Id.*

Employer appealed to the Board. Employer challenged the WCJ's reliance upon *Whitfield*, which Employer contended was wrongly decided. The Board found no error in the WCJ's application of *Whitfield*, and, to the extent Employer argued against its holding generally, the Board recognized *Whitfield* as a binding precedent from which it was not entitled to depart. Employer further argued that Claimant waived any constitutional defect in his 2013 IRE by failing to raise it earlier. Rejecting this assertion, the Board observed that the claimant in *Whitfield* likewise did

5

not challenge the constitutionality of her IRE until after *Protz I* was decided, and this Court held that her challenge was timely because she petitioned for reinstatement within three years from the date of the last payment of compensation, as permitted by section 413(a) of the Act, 77 P.S. §772. The Board additionally cited *Timcho v. Workers' Compensation Appeal Board (City of Philadelphia)*, 192 A.3d 1219 (Pa. Cmwlth. 2018) (*en banc*), in which this Court expressly rejected the assertion of waiver under similar circumstances. Here, the Board noted, Claimant filed his Petitions before his partial disability benefits expired, rendering his challenge timely under section 413(a) of the Act.

Employer further challenged the WCJ's refusal to allow it to develop vocational evidence in order to establish Claimant's earning power. The Board found no error in that decision, noting that *Whitfield* discussed a distinction between a disability determination based upon *earning power* and one based upon an *impairment rating*. It would not make sense to require evidence of changed earning power, *Whitfield* explained, "for claimants whose change in disability status was never based on either a change in earning power or a change in physical condition, but solely on an impairment rating." (Board Decision at 6; R.R. at 111a (quoting *Whitfield*, 188 A.3d at 615).) The Board concluded that evidence relating to Claimant's earning power would not affect the determination, because his disability status was based upon his impairment rating rather than his earning power.

Finally, Employer argued that, under Act 111, Claimant's 2013 IRE should remain in effect, rendering Claimant ineligible for total disability status, unless and until he demonstrates he has a whole body impairment rating equal to or greater

6

than 35% under the Sixth Edition of the *Guides*.[8]  The Board found no error in the WCJ's decision to the contrary.  The Board observed that Claimant's 2013 IRE was conducted pursuant to the provision of the Act held unconstitutional in *Protz II*, and, although Act 111 provides for IREs to be conducted under the Sixth Edition of the *Guides*, there is no indication the applicable provisions of Act 111 were intended to apply retroactively to IREs conducted before the effective date of Act 111.  Moreover, the Board noted, nearly seven years had elapsed since Claimant's IRE, and Claimant's condition may have worsened in the interim.  Finding Claimant satisfied his burden as elucidated by this Court in *Whitfield*, the Board affirmed the WCJ's decision granting Claimant's Modification and Review Petitions.

Employer appealed the Board's decision to this Court.[9]

## Arguments

Although couched as a single assertion of error—that the Board erred in upholding the WCJ's decision to reinstate Claimant's total disability status—Employer's position rests upon several lines of argument.  Employer asserts that Claimant waived the right to lodge a constitutional objection to his 2013 IRE by failing to litigate the matter when WCJ Tobin approved the parties' stipulation to partial disability status based upon the 2013 IRE.  (Employer's Br. at 19-22.)  Employer

---

[8] In a departure from the 50% impairment specified in the former version of the Act, under Act 111, if a claimant is determined to exhibit an impairment rating of 35% or greater under the Sixth Edition of the Guides, the claimant "shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits . . . ."  Section 306(a.3)(2) of the Act, 77 P.S. §511.3(2).

[9] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated."  *Whitfield*, 188 A.3d at 605 n.6 (citing *Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007)).

7

further argues that *Protz II* was not intended to apply "retroactively." *Id.* at 23-25. Employer calls upon us to overrule *Whitfield*, which Employer asserts was wrongly decided, inasmuch as it allowed a claimant to satisfy his burden to establish disability with his own testimony, rather than medical evidence, and without regard to evidence of the claimant's earning power. *Id.* at 27-33. Moreover, Employer suggests that *Whitfield*'s concern for the ability of a claimant to obtain a change in disability status absent the IRE provisions invalidated in *Protz II* is no longer salient, inasmuch as Act 111 subsequently provided a new IRE procedure. *Id.* at 28 & n.3. Along those lines, Employer finally contends that, in light of Act 111, Claimant should remain on partial disability status consistent with his 2013 IRE, unless he can demonstrate a whole body impairment of 35% or greater pursuant to the Sixth Edition of the *Guides. Id.* at 39.

Claimant, by contrast, argues that the Board and the WCJ correctly applied *Whitfield* to the facts. Claimant contends that he did not waive the right to seek modification of his disability status because, as in *Whitfield*, he filed his Petitions within the three-year period set forth in section 413(a) of the Act, 77 P.S. §772. (Claimant's Br. at 8.) Claimant notes that this Court confirmed the timeliness of such action in *Timcho*. In any event, Claimant asserts that the parties' stipulation in 2013 expressly preserved the rights of both parties to further challenge Claimant's benefit status in the future, for any reason and at any time. *Id.* at 8-9. Thus, Claimant contends, even absent *Whitfield* and *Timcho*, the terms of the stipulation did not foreclose his subsequent attempt to alter his disability status. With regard to the substance of *Whitfield*'s holding, Claimant observes that he testified to his continued and increased disability resulting from his injury, the WCJ credited his testimony, and Employer offered no rebuttal, and he thus met his evidentiary burden. *Id.* at 10. Claimant further relies upon *Whitfield* to counter Employer's argument regarding the preclusion of

8

vocational evidence relating to Claimant's earning power. *Whitfield* highlighted the different avenues by which disability determinations may be altered, and reasoned that, where a claimant's change from total to partial disability was based upon an impairment rating rather than earning power, there is no reason that reinstatement from partial to total disability should be based upon evidence of earning power. *Id.* at 10-11. Finally, with regard to Act 111, Claimant asserts that there is no basis upon which to conclude that its new IRE provisions were intended to apply retroactively to invalidated, pre-*Protz* IREs. *Id.* at 13-14.

**Analysis**

As the parties recognize, our analysis in this matter is significantly informed by this Court's *en banc* decision in *Whitfield*, as well as subsequent cases that have addressed the issues Employer brings before us. *Whitfield* concerned the procedures to be employed in adjudicating certain issues which arose in the wake of the *Protz I* and *Protz II* decisions, specifically the ability of a claimant to seek modification of disability status in light of the determination that an earlier IRE was conducted under an unconstitutional statutory provision. The claimant in *Whitfield* underwent an IRE in 2006, which resulted in a 44% impairment rating under the Fifth Edition of the *Guides*—a figure short of the 50% rating necessary for a determination of total disability at the time. *Whitfield*, 188 A.3d at 602. Following this Court's decision in *Protz I*, the claimant filed a petition seeking reinstatement of her total disability benefits, contending that her 2006 IRE was invalid in light of the decision. Following a thorough discussion of *Protz I* and *Protz II*, as well as the law that had developed around those decisions, *id.* at 606-11, this Court determined that both the

9

timeliness and the substance of the claimant's petition were governed by section 413(a) of the Act, which provides, in relevant part, as follows:

> A workers' compensation judge designated by the department may, at any time, modify, **reinstate**, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, **upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased**, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, [t]hat . . . no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department **within three years after the date of the most recent payment of compensation** made prior to the filing of such petition.

*Whitfield*, 188 A.3d at 612 (quoting section 413(a) of the Act, 77 P.S. §772) (emphasis in original).

Rejecting the employer's assertion of waiver due to the claimant's failure to raise an earlier constitutional objection to her IRE, this Court noted that the claimant had filed her petition within three years after the date of her most recent compensation payment, rendering her petition timely under section 413(a) of the Act. *Whitfield*, 188 A.3d at 612; *see also id.* at 617 ("Because [c]laimant filed her [p]etition within three years from the date of her last payment of compensation as permitted by [section 413(a) of the Act], she was entitled, as a matter of law, to seek modification of her disability status based upon the *Protz* decisions, which found the IRE provision unconstitutional."). This Court's *en banc* decision in *Timcho* addressed a similar

10

assertion of waiver even more directly. *Timcho* "followed a procedural path similar to" *Whitfield*, but, unlike in *Whitfield*, the claimant in *Timcho* sought reinstatement of his total disability status before he had exhausted his 500 weeks of partial disability. *Timcho*, 192 A.3d at 1223-24. His petition, therefore, "was filed well within the applicable time constraints." *Id.* at 1224.

Like the claimant in *Timcho*, Claimant in the instant case filed his Petitions before exhausting his 500 weeks of partial disability. Thus, the three-year limitation of section 413(a) had not yet even begun to run. Accordingly, as in *Timcho*, Claimant's Petitions were filed well within the time constraints of section 413(a). Because Claimant's challenge was plainly permitted under *Whitfield* and *Timcho*, we reject Employer's contention that Claimant waived his right to seek modification of his disability status by failing to challenge the offending IRE in 2013.

Further, this does not mean we are applying the *Protz* decisions "retroactively," as Employer argues. As *Whitfield* explained:

> A retroactive law has been defined as one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired . . . . **A law is given retroactive effect when it is used to impose new legal burdens on a past transaction or occurrence**.

*Whitfield*, 188 A.3d at 616 (quoting *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corporation*, 421 A.2d 521, 523 (Pa. Cmwlth. 1980)) (emphasis in original). "Simply because *Protz II* is being applied to a case that arose from a work injury and a change in disability status that predates it does not mean it operates retroactively." *Id.* at 617 (citing *Warren v. Folk*, 886 A.2d 305, 308 (Pa. Super. 2005)). We reasoned that application of *Protz II* did not change the claimant's past status. "Rather, it gives effect to the [c]laimant's status as it existed

11

at the time she filed her reinstatement petition, which was filed within the statutory timeframe for filing such petitions." *Id.*

The question of the retroactivity of the *Protz II* decision has arisen in other recent decisions of this Court. *See Weidenhammer v. Workers' Compensation Appeal Board (Albright College)*, 232 A.3d 986 (Pa. Cmwlth. 2020); *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635 (Pa. Cmwlth. 2018) (*en banc*) (*Dana I*).[10] In *Weidenhammer*, decided just last year, this Court reaffirmed *Whitfield*'s approach. Unlike the claimants in *Whitfield* and *Timcho*, the claimant in *Weidenhammer* sought reinstatement of her total disability status *beyond* the three-year period provided in section 413(a) of the Act; she thus sought a determination that *Protz II* is fully retroactive and affords her relief despite the statutory time limitation. *Weidenhammer*, 232 A.3d at 988-89. This Court declined to so hold. After discussing the principles governing the retroactive application of a new rule of law, as expounded by our Supreme Court in *Blackwell v. State Ethics Commission*, 589 A.2d 1094 (Pa. 1991) (*Blackwell III*), this Court in *Weidenhammer* held that "the ruling in *Protz II* was not intended to be given a fully retroactive effect, without regard to the statute of repose in [s]ection 413(a) of the Act, 77 P.S. §772." *Weidenhammer*, 232 A.3d at 995. In light of *Whitfield* and *Dana I*, we summarized, "*Protz II* applies to cases in active litigation when the Supreme Court issued its decision *or where a reinstatement petition is filed within three years of the most recent compensation payment* in accordance with [s]ection 413(a) of the Act, 77 P.S. §772." *Weidenhammer*, 232 A.3d at 991 (emphasis added). Because the claimant in

---

[10] In *Dana I*, this Court held that "*Protz II* applies to cases where the underlying IRE was actively being litigated when that decision was issued . . . ." *Dana I*, 195 A.3d at 643. Our Supreme Court affirmed this Court's decision in *Dana I* on June 16, 2020. *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, 232 A.3d 629 (Pa. 2020) (*Dana II*).

12

*Weidenhammer* had not sought reinstatement of her total disability status within the three years provided by section 413(a) of the Act, and because her challenge was not preserved in active litigation at the time *Protz II* was decided, the claimant was not entitled to relief.[11]

Again, the instant case shares the factual predicates of *Whitfield* and *Timcho*, rather than *Weidenhammer*. Claimant here filed his Petitions well within the three years afforded by section 413(a) of the Act. Applying *Protz II* to his Petitions does not alter Claimant's past status, but rather, "it gives effect to . . . Claimant's status as it existed at the time" *that he filed the Petitions*, which were "filed within the statutory timeframe for filing such petitions." *Whitfield*, 188 A.3d at 617. The WCJ's and Board's application of *Protz II* in this matter thus fits comfortably within our settled precedent, and we find no error in this regard.

*Whitfield* also bears heavily upon Employer's position that it should have been entitled to develop and present vocational evidence relating to Claimant's earning power in order to rebut his assertion of total disability. *Whitfield* recognized that, in assessing a petition to modify, reinstate, suspend, or terminate a notice of compensation payable under section 413(a), we must examine whether "the disability of [Claimant] has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. §772; *Whitfield*, 188 A.3d at 612. We noted that "the term 'disability' is a term of art in the workers' compensation context" generally "synonymous with loss of earning power resulting from a work-related injury." *Id.* (citing *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Stopa)*, 789 A.2d 413, 416 (Pa. Cmwlth. 2001)). "Disability," however, "may also refer to a **status**, which is linked to the rate

---

[11] Notably, like Employer in this appeal, the claimant in *Weidenhammer* argued that *Whitfield* was wrongly decided and should be overruled. This Court rejected that contention. *See Weidenhammer*, 232 A.3d at 995-96.

13

or amount of compensation to which a claimant is entitled. Traditionally, this status was linked to a claimant's earning power." *Id.* (emphasis in original).[12]

The traditional understanding of "disability" as solely a function of earning power underwent a change with the addition to the Act of now-repealed section 306(a.2). As *Whitfield* explained, "[t]he addition of [former] section 306(a.2) to the [Act] in 1996 provided another method of changing a claimant's disability status from total to partial disability, but this time, **without regard** to any change in a claimant's earning power." *Id.* at 613 (emphasis in original). These parallel tracks were underscored, *Whitfield* noted, by this Court's decision in *Diehl v. Workers' Compensation Appeal Board (I.A. Construction)*, 972 A.2d 100, 104-05 (Pa. Cmwlth.

---

[12] With respect to "earning power," section 306(b)(2) of the Act provides:

> "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation. The vocational expert shall comply with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses.

77 P.S. §512(2).

2009), *aff'd*, 5 A.3d 230 (Pa. 2010). *Diehl* addressed the distinction between a change in disability status under section 306(b)(2), based upon a change in earning power, and a change in disability status based upon an impairment rating under former section 306(a.2), and concluded that "IRE remedies are separate from remedies involving actual ability to work." *Id.* at 108. "[T]o require proof both of a claimant's level of impairment and a claimant's earning power would render the IRE provisions meaningless." *Id.* In light of *Diehl*, *Whitfield* explained, "**earning power is not a factor** when seeking a change in disability status under [former s]ection 306(a.2)." *Whitfield*, 188 A.3d at 614 (citing *Diehl*, 972 A.2d at 106).

> Applying this distinction, *Whitfield* reasoned:
>
> In summary, until the IRE provisions were struck down as unconstitutional, a claimant's disability status could be modified from total to partial disability in one of two ways: based upon evidence of earning power under [s]ection 306(b)(2) or based upon a claimant's impairment rating, without regard to his or her earning power, under [former s]ection 306(a.2). Because earning power did not play any role in [the claimant's] change from total to partial disability here, we discern no reason why the term "disability" in [s]ection 413(a) governing reinstatement from partial to total disability in this case should be restricted to its traditional definition of earning power. As the above case law demonstrates, disability can also be a status, where the claimant is either totally or partially disabled, as here, based upon impairment rating[,] not earning power.

*Id.* (citation omitted). *Whitfield* further commented: "It makes little sense to require a claimant seeking reinstatement based upon an unconstitutional IRE to show a change in earning power when the employer was not required to show the same when it had the claimant's disability status modified from total to partial." *Id.* at 615. In light of this discussion, we find no error in the WCJ's decision to exclude evidence of

15

Claimant's earning power, or the Board's affirmance of that decision. Simply, Claimant's disability status was based upon the impairment rating ascertained through his 2013 IRE, not based upon his earning power.

Employer further takes issue with the manner in which *Whitfield* permits a claimant in this position to proceed. *Whitfield* opined that the circumstance at issue was "more akin to a claimant seeking reinstatement of benefits currently under suspension than one seeking reinstatement of benefits following termination because there is no allegation that [the claimant's] disability has ceased." *Id.* at 614-15. Suspension status, our Supreme Court has noted, "actually **acknowledges** a continuing medical injury." *Id.* at 615 (quoting *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 642 A.2d 1083, 1085 (Pa. 1994)) (emphasis in original). With regard to the claimant's burden, *Whitfield* explained:

> In situations where benefits were suspended, a claimant is only required to demonstrate that the reasons for the suspension no longer exist. [*Pieper v. Ametek–Thermox Instruments Division*, 584 A.2d 301, 304 (Pa. 1990)]. A claimant is not required to demonstrate with medical evidence that the work-related injury giving rise to the benefits continues; a claimant's testimony to that effect satisfies the claimant's burden of proof. *Latta*, 642 A.2d at 1085. Our Supreme Court has held that "once a claimant testifies that his prior work-related injury continues, the burden shifts to his employer to prove the contrary. Where an employer fails to present evidence to the contrary, the claimant's testimony, if believed by the [WCJ], is sufficient to support reinstatement." *Id.* The Supreme Court explained that because the claimant already established a work-related injury, it would be improper to require a claimant to establish it again. *Id.* "In such suspension situations, the causal connection between the original work-related injury and the disability which gave rise to compensation is **presumed**." *Pieper*, 584 A.2d at 305 (emphasis in original).

16

*Id.*[13]

In *Whitfield*, we noted that the claimant testified that she had been wholly unable to work since she had surgery in 2002, and the employer presented no evidence to the contrary. *Id.* at 616. If her testimony was credited, *Whitfield* reasoned, then that testimony would satisfy her burden. *Id.* (citing *Latta*, 642 A.2d at 1085). Because the WCJ there had declined to make any findings relating to the claimant's credibility, we remanded the matter for the WCJ to make factual findings regarding the claimant's credibility. *Id.* Here, Claimant similarly testified about the ongoing and increasing impact of his injury, and Employer presented no evidence to the contrary. Unlike *Whitfield*, however, the WCJ expressly credited Claimant's testimony. (WCJ Decision at 4; R.R. at 77a.)

Employer contends that *Whitfield*'s allowance of a change in disability status based solely on the claimant's testimony was motivated by the absence, at the time, of any mechanism to obtain a new impairment rating. *Whitfield* indeed noted that "[t]he impediment that rendered [the claimant] partially disabled under the [Act], *i.e.*, the **impairment rating**, is no longer a valid means of changing a claimant's status." *Whitfield*, 188 A.3d at 614. Thus, there "was no longer a legal basis for [the claimant's] disability status to remain partial because the IRE upon which the change in status was predicated was found, as a matter of law, unconstitutional and invalid." *Id.* Employer

---

[13] *Whitfield* further distinguished our Supreme Court's decision in *Stanek v. Workers' Compensation Appeal Board (Greenwich Collieries)*, 756 A.2d 661, 668 (Pa. 2000), to the extent *Stanek* would require a claimant seeking reinstatement of total disability benefits after the expiration of partial disability benefits to demonstrate (1) a loss of earning capacity, and (2) a worsening of the claimant's medical condition. *Whitfield* concluded that *Stanek* was "distinguishable in that the claimant there did not have his status changed based upon an impairment rating; rather, the claimant there received partial disability benefits based upon a change in his earning power." *Whitfield*, 188 A.3d at 615. As discussed above, *Whitfield* reasoned that these methods of demonstrating a change in disability status are distinct.

argues that the enactment of Act 111 has filled the gap that concerned this Court in *Whitfield*, and that this legislation thus undercuts *Whitfield*'s holding. Act 111 indeed has provided for a new IRE procedure. *See* section 306(a.3) of the Act, 77 P.S. §511.3. However, in order to evaluate the impact of Act 111 upon this matter, we must return to the question of retroactivity. As with the other issues before the Court, we do not write upon a blank slate in this regard.

This Court recently addressed the impact of Act 111 upon these proceedings in *Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020) (*en banc*). Quite similarly to the instant case, the claimant in *Rose* underwent an IRE in 2013 pursuant to the Sixth Edition of the *Guides*, his disability status was accordingly modified to partial, and a WCJ later concluded that he was entitled to modification from partial to total disability in light of *Protz II*. *Id.* at 553-56. Also like the instant case, the claimant in *Rose* sought reinstatement of his total disability status within the three years specified in section 413(a) of the Act, 77 P.S. §772, rendering his petition timely under *Whitfield*. *Rose*, 238 A.3d at 556-57. And like Employer here, the employer in *Rose* argued that, in light of Act 111, the claimant's 2013 IRE should remain valid because it was conducted under the Sixth Edition of the *Guides*, and that the claimant should remain on partial disability status absent a new impairment rating at or above 35% under section 306(a.3) of the Act, 77 P.S. §511.3. *Rose*, 238 A.3d at 558.

The *en banc* panel in *Rose* noted that there was no dispute "that the IRE performed in 2013 would comply with the requirements of [s]ection 306(a.3), as it was done under the Sixth Edition" of the *Guides*. *Id.* at 558-59. This is true of the instant case as well. The dispute, however, was not application of the Sixth Edition of the *Guides* in the abstract, but rather, whether the employer could "utilize the 2013 IRE to

18

maintain [the claimant's] disability status as partial, through the retroactive application of Act 111, despite *Protz II*." *Id.* at 559. This was a question concerning the retroactivity of Act 111, and, thus, a question of legislative intent. *Id.* (quoting 1 Pa.C.S. §1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."); 1 Pa.C.S. §1953 ("[N]ew provisions shall be construed as effective only from the date when the amendment became effective."); *Keystone Coal Mining Corp. v. Workmen's Compensation Appeal Board (Wolfe)*, 673 A.2d 418, 420 (Pa. Cmwlth. 1996) ("[S]tatutes must be given prospective effect only, unless the statute includes clear language to the contrary.")).

Generally, a statute is to be read prospectively, unless it provides clearly to the contrary. "An exception to this rule is where the statute is merely procedural and does not alter any substantive rights, in which case it may be retroactively applied, irrespective of whether the statutory amendment includes an express retroactivity clause." *Id.* (citing *Keystone*, 673 A.2d at 421). After a thorough review of precedent concerning the dichotomy between substantive and procedural statutory provisions, specifically as those principles have been applied to the Workers' Compensation Act, *see id.* at 559-61, this Court concluded that Act 111's addition of section 306(a.3) was a substantive change in the law—a conclusion bolstered by our Supreme Court's holding in *Dana II* that former section 306(a.2) was a substantive provision. *Id.* at 562-63 (citing *Dana II*, 232 A.3d at 646-47). As for legislative intent, the *en banc* panel in *Rose* observed that one provision of Act 111, relating to the provision of credit to employers/insurers for weeks of total and/or partial compensation benefits paid, referred to Act 111's application prior to the date of its enactment. *Id.* at 561.[14]

--------

[14] Section 3 of Act 111 provides, in relevant part:

**(Footnote continued on next page…)**

19

However, this provision did not "evidence clear legislative intent that the entirety of Act 111 should be given retroactive effect." *Id.* at 562. In sum, *Rose* held, "[b]ecause substantive changes in the law, such as this, require express legislative language providing for retroactivity, which is lacking here, Act 111 cannot be applied retroactively." *Id.* at 563 (citing *Keystone*, 673 A.2d at 421).

Summarizing the subsequent steps that may be taken, *Rose* explained that, because the claimant had already received 104 weeks of total disability benefits, the employer could seek a new IRE under section 306(a.3). *Id.* Should a new IRE yield an impairment rating below 35%, the employer could change the claimant's status back to partial disability through the process set forth in section 306(a.3). *Id.* If that change in status is not appealed or is upheld on appeal, the employer would be entitled to credit for the weeks of partial disability benefits paid between the date of the first IRE and the date of the claimant's petition, and the employer would be liable for 500 weeks of partial disability compensation less the number of weeks of partial disability that it previously paid. *Id.* In sum, *Rose* reasoned:

> (1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under section 306(a.3)(1) of the [A]ct, an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph. This section shall not be construed to alter the requirements of section 306(a.3) of the [A]ct.
>
> (2) For the purposes of determining the total number of weeks of partial disability compensation payable under section 306(a.3)(7) of the [A]ct, an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph.

Section 3 of Act 111; *see Rose*, 238 A.3d at 561. Employer does not presently assert that it is entitled to credit under section 3 of Act 111, but Employer makes one reference to it, suggesting that it renders the entirety of Act 111 retroactive. (Employer's Br. at 36.) As discussed herein, *Rose* rejected this exact argument. *Rose*, 238 A.3d at 562.

This result is consistent with the plain language of Act 111, as well as this Court's *en banc* decision in *Whitfield*. This approach also gives effect to the Supreme Court's decision in *Protz II*. While it is true that [s]ection 306(a.3) essentially reenacted the IRE provisions, importantly, [s]ection 306(a.3) did not take effect until it was enacted on October 24, 2018. Therefore, until that time, [e]mployer could not utilize an IRE to change [c]laimant's disability status, even if the IRE otherwise complied with the later enacted requirements of [s]ection 306(a.3)(1) because no law permitted [e]mployer to utilize an IRE process until Act 111 was enacted. *There is no provision in Act 111 which specifically or implicitly provides for an IRE performed prior to [s]ection 306(a.3)'s enactment to be validated afterward.* Arguably, this would undermine the invalidation of IREs by the Supreme Court in *Protz II*, whereas the approach set forth herein gives effect to the statutory language while upholding the legislative balance of claimants' and employers'/insurers' interests in light of *Protz II* and Act 111.

*Id.* at 563-64 (emphasis added; footnote omitted).

This discussion disposes of Employer's position on the impact of Act 111 upon this appeal. *Rose* precludes retroactive application of section 306(a.3), and makes clear that Act 111 did not rescue earlier, invalidated IREs merely because they happened to be conducted under the Sixth Edition of the *Guides*.

### Conclusion

*Whitfield*, *Timcho*, *Weidenhammer*, and *Rose* serve to defeat each of Employer's assertions of error in the Board's decision. Claimant's challenge was not waived, and his Petitions were not untimely, under *Whitfield* and *Timcho*. The Board did not improperly apply *Protz II* retroactively for the reasons discussed in *Whitfield* and *Weidenhammer*. Claimant adequately demonstrated his entitlement to modification of his benefit status under the procedures articulated in *Whitfield*. Finally,

21

under *Rose*, Act 111 does not apply retroactively, and does not salvage Claimant's invalidated 2013 IRE. As it perhaps goes without saying, we decline Employer's invitation to overrule *Whitfield*, for our decision there was carefully reasoned and has served as a cornerstone of the precedents that have developed to help parties navigate the landscape of workers' compensation post-*Protz*. Fortunately, the above-discussed precedents have resolved many of the outstanding issues concerning the scope of *Protz II* and Act 111, and, going forward, Act 111 provides for the procedures to be employed.[15] As it concerns this appeal, we find no error in the Board's decision.

The order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[15] To this end, we emphasize that nothing in this opinion precludes Employer from seeking a new IRE and another modification, if warranted, under section 306(a.3) of the Act, 77 P.S. §511.3.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                          :
                   Petitioner   :
                              :   No.  1804 C.D. 2019
             v.                              :
                              :
Workers' Compensation Appeal           :
Board (Donovan),                             :
                   Respondent   :

## *ORDER*

AND NOW, this 22nd day of April, 2021, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,              :
                    Petitioner   :
                                 :
         v.                      :    No. 1804 C.D. 2019
                                 :    Submitted: September 4, 2020
Workers' Compensation Appeal      :
Board (Donovan),                 :
                    Respondent   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: April 22, 2021

        Respectfully, I dissent.

        The majority reinstates Kenneth Donovan (Claimant) to total disability
status as of November 13, 2017, the date on which he filed his reinstatement petition.
I agree that this holding comports with *Rose Corporation v. Workers' Compensation
Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020) (*en banc*), and *Whitfield
v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*,
188 A.3d 599 (Pa. Cmwlth. 2018). I also agree that *Whitfield* was correctly decided.
I now believe, however, that *Rose Corporation* was wrongly decided because it gave
no effect to Act 111,[1] which was enacted subsequent to our decision in *Whitfield*.

        Claimant's impairment rating evaluation (IRE) was conducted on
January 25, 2013, under the Sixth Edition of the American Medical Association's

---

[1] Act of October 24, 2018, P.L. 714, No. 111 (Act 111). Because the Supreme Court did not
address Section 3(2) of Act 111 in *Dana Holding Corporation v. Workers' Compensation Appeal
Board (Smuck)*, 232 A.3d 629 (Pa. 2020), that case is not dispositive of the issue raised in *Rose
Corporation*.

*Guides to the Evaluation of Permanent Impairment* (AMA Guides) and yielded an impairment rating of 15%. This IRE resulted in a change in Claimant's disability status from total to partial. Because this IRE was conducted in accordance with Act 111's IRE standards and yielded an impairment rating of less than 35%, Claimant is not entitled to be reinstated to total disability.[2] Stated otherwise, Act 111 entitles the City of Pittsburgh (Employer) to claim credit for all weeks of partial disability paid to Claimant from January 25, 2013, to the present.

Section 3(2) of Act 111 states that "an insurer shall be given credit for weeks of partial disability compensation *paid prior to the effective date of this paragraph.*"[3] Act 111, §3(2) (emphasis added). This lookback provision, together with Act 111's immediate effective date, expressed an intention by the General Assembly to authorize the use of an IRE that conforms to Act 111's standards to

---

[2] Section 306(a.3)(2) of the Workers' Compensation Act provides in pertinent part:

> If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than thirty-five per centum impairment under the [AMA] "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impairment rating less than thirty-five per centum impairment under the [AMA] "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), the employe shall then receive partial disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act 111, 77 P.S. §511.3(2).

[3] Section 3(2) of Act 111 states:

> (2) For the purposes of determining the total number of weeks of partial disability compensation payable under section 306(a.3)(7) of the [Workers' Compensation Act, added by Act of October 24, 2018, P.L. 714, 77 P.S. §511.3(7)], *an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph.*

Act 111, §3(2) (emphasis added). Section 3(2) is a retroactive provision; it grandfathers the IRE done that conforms to Act 111 standards, regardless of when it was done.

MHL-2

determine a claimant's disability status, even if the IRE was done before the passage of Act 111. Accordingly, this Court erred when it stated as follows:

> There is no provision in Act 111 which specifically or implicitly provides for an IRE performed **prior** to Section 306(a.3) [of Act 111]'s enactment to be validated afterward.

*Rose Corporation*, 238 A.3d at 563 (emphasis in original). To the contrary, that provision is found in Section 3(2) of Act 111.

Effectively, under *Rose Corporation*, an employer will receive credit for pre-Act 111 partial disability payments made to a claimant up to the date of the claimant's reinstatement petition regardless of what the pre-Act 111 IRE showed or how it was conducted. This is at odds with the language of Act 111. The employer may receive credit for partial disability payments made "prior to the effective date" of Act 111 only where the pre-Act 111 IRE satisfies the standards of Act 111. *See* Section 3(2) of Act 111. The Act 111 standards require the pre-Act 111 IRE to be conducted under the Sixth Edition (second printing) of the AMA Guides and to demonstrate a whole body impairment of less than 35%. This construction gives effect to all the provisions of Act 111.[4]

*Rose Corporation* makes the date of the reinstatement petition, not the manner by which the IRE was conducted or its result, dispositive of all questions.[5]

---

[4] Conversely, Act 111 does not authorize credit for pre-Act 111 payments made on the basis of an IRE that showed an impairment rating of more than 35% but less than 50%, as was permitted under the law prior to Act 111. In that instance, the claimant is entitled to reinstatement to total disability as of the date of the pre-Act 111 IRE. This reinstatement is not automatic; it requires the timely filing of a reinstatement petition. *Whitfield*, 188 A.3d at 617.

[5] In *Rose Corporation*, the Workers' Compensation Appeal Board (Board) relied solely upon *Whitfield*, 188 A.3d 599, to hold that the claimant was entitled to reinstatement as of the date the reinstatement petition was filed. The Board in *Rose Corporation* did not address the IRE standards of Act 111, which were in effect. Because the claimant's IRE was conducted under the Sixth Edition of the AMA Guides and showed an impairment of less than 35%, he was ineligible for

It is as if Act 111 was never enacted. Section 3(2) of Act 111 has been rendered mere surplusage, which violates the clear directive of our Supreme Court on how we construe statutes. *Holland v. Marcy*, 883 A.2d 449, 456 (Pa. 2005) ("[C]ourts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage.").

I would reverse the Board. Claimant is not entitled to reinstatement to total disability because his IRE, done under the Sixth Edition of the AMA Guides, showed a whole body impairment of less than 35%.

_____
MARY HANNAH LEAVITT, President Judge

---

reinstatement. Here, by contrast, the Board addressed Act 111. However, the Board held that Act 111 applies only where an IRE is done after Act 111's effective date, and the credit provision in Section 3(2) of Act 111 is not triggered until a new IRE is obtained after the effective date of Act 111. The Board has not explained how an employer can get credit for payments made prior to Act 111 based on an IRE done after Act 111's passage. A new IRE would have to trigger a new modification and could not have an effective date that precedes the effective date of Act 111. Stated otherwise, the Board's construction gives no effect to the retroactivity clause in Section 3(2) of Act 111.