Bernie Stoshick,                          :
                    Petitioner            :
                                          :
          v.                              :
                                          :
Air Products & Chemicals, Inc. and        :
Indemnity Insurance Company of            :
North America (Workers'                   :
Compensation Appeal Board),               :     No. 27 C.D. 2021
                    Respondents           :     Submitted:  September 24, 2021


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED:  February 3, 2022


          Bernie Stoshick (Claimant) petitions this Court for review of the
Workers' Compensation (WC) Appeal Board's (Board) December 21, 2020 order
affirming Workers' Compensation Judge Joseph Sebastianelli's (WCJ Sebastianelli)
decision that granted Claimant's remanded Petitions to Reinstate, Modify, and
Review WC Benefits (Reinstatement, Modification and Review Petitions)
(collectively, Petitions) as of July 27, 2017, and granted Air Products & Chemicals,
Inc.'s (Employer) Modification Petition as of February 25, 2019.  Claimant presents
two issues for this Court's review: (1) whether Act 111[2] can be constitutionally

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge
Emerita Leavitt became a senior judge on the Court.

[2] Act of October 24, 2018, P.L. 714.  Act 111 repealed the unconstitutional Impairment
Rating Evaluation (IRE) provision and replaced it with a new IRE provision, Section 306(a.3) of
the WC Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act 111, 77 P.S. §
511.3, that was virtually identical and effective immediately.  Act 111 specifically incorporated

applied to workers whose injuries occurred before Act 111's October 24, 2018 effective date; and (2) whether Act 111 contains sufficiently specific language to make the law retroactive. After review, this Court affirms.

On March 17, 2009, Claimant sustained an injury while working for Employer. On July 26, 2011, Claimant underwent an Impairment Rating Evaluation (IRE) by Dr. Emmanuel Jacobs (Dr. Jacobs). Using the American Medical Association (AMA) "Guides to the Evaluation of Permanent Impairment (Guides)," 6th edition, Dr. Jacobs determined that Claimant had an impairment rating of less than 50%. On August 24, 2011, Employer issued a Notice of Change of Workers' Compensation Disability Status (Notice of Change), changing Claimant's WC status from total disability to partial disability, effective July 26, 2011.

On July 27, 2017, Claimant filed the Petitions requesting reinstatement of temporary total disability benefits based on the Pennsylvania Supreme Court's decision in *Protz v. Workers' Compensation Appeal Board (Derry School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*).[3] On February 13, 2018, WCJ Sebastianelli granted Claimant's Petitions and reinstated Claimant's WC benefits to temporary total disability as of July 26, 2011. Employer appealed and the Board remanded the matter to the WCJ in accordance with *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018).[4]

On October 24, 2018, the Pennsylvania General Assembly passed Act 111, which replaced the IRE process that was previously held unconstitutional by *Protz II*. On February 25, 2019, Claimant underwent a new IRE pursuant to Act

---

and adopted the use of the American Medical Association "Guides to Evaluation of Permanent Impairment," 6th edition (second printing April 2009), for performing IREs.

[3] *Protz II* was decided June 20, 2017.

[4] *Whitfield* was decided June 6, 2018. The *Whitfield* Court held that the proper date for modification based on an unconstitutional IRE is the date the reinstatement petition is filed.

111's standards as set forth in Section 306(a.3) of the WC Act (Act).[5] Claimant's new impairment rating was 13%. On May 11, 2020, in separate but identical decisions, WCJ Sebastianelli reinstated Claimant's total disability benefits effective July 27, 2017, the date Claimant filed his Reinstatement Petition, and granted Employer's Modification Petition, modifying Claimant's status from total to partial disability, effective February 25, 2019, the date the IRE was performed pursuant to Act 111. Claimant appealed from both decisions to the Board. On December 21, 2020, the Board affirmed both WCJ Sebastianelli's reinstatement of benefits to total disability as of the date Claimant filed his Petitions, and the modification of benefits to partial disability based on the IRE conducted pursuant to Act 111. Claimant appealed to this Court.[6, 7]

Claimant argues that, pursuant to *Protz II*, WCJ Sebastianelli should have reinstated Claimant's total disability benefits as of July 26, 2011, the date the constitutionally invalid IRE was performed. However, because Claimant did not challenge the validity of the July 26, 2011 IRE until after *Protz II* was decided, *Whitfield* and its progeny mandate that Claimant is not entitled to reinstatement of total disability benefits as of the IRE date.

The *Whitfield* Court explained:

> Our decision today does not impose any new legal consequences based upon a past transaction. Simply because *Protz II* is being applied to a case that arose from a work injury and a change in disability status that predates it does not mean it operates retroactively. It would be

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511.3.

[6] "[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether board procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019).

[7] The Pennsylvania Association for Justice filed an *amicus curiae* brief in support of Claimant's position.

> retroactive if it related back and gave a prior transaction a legal effect different from that which it had under the law in effect at the time. <u>This decision does not alter Claimant's **past** status. Rather, it gives effect to the Claimant's status as it existed at the time []he filed [his] reinstatement petition</u>, which was filed within the statutory timeframe for filing such petitions.

*Whitfield*, 188 A.3d at 617 (underline emphasis added; citations omitted); *see also Rose Corp. v. Workers' Comp. Appeal Bd. (Espada)*, 238 A.3d 551, 564 (Pa. Cmwlth. 2020) ("[T]he Board's conclusion that [**the c]laimant was entitled to reinstatement of total disability benefits as of the date** [**the c]laimant filed the** [**reinstatement p]etition** is consistent with Act 111, the [] Act, and precedent." (emphasis added)); *White v. Workers' Comp. Appeal Bd. (City of Phila.)*, 237 A.3d 1225, 1231 (Pa. Cmwlth. 2020), *appeal denied*, 244 A.3d 1230 (Pa. 2021) ("[The c]laimant's modification from total to partial disability was effective in 2013 and had not been appealed. Accordingly, [**the c]laimant** [] **is entitled to reinstatement as of the date of h**[**is**] **reinstatement petition**, not the effective date of the change in h[is] disability status from total to partial." (emphasis added)). Consequently, Claimant is entitled to reinstatement of total disability benefits as of the date he filed his Reinstatement Petition.

Claimant further contends that the Board's decision violates article I, section 11 of the Pennsylvania Constitution,[8] also known as the Remedies Clause,

---

[8] Article I, section 11 of the Pennsylvania Constitution declares:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11.

because it deprives Claimant of a vested right to WC benefits and improperly gives force to an unconstitutionally invalid statute. However,

> [the Pennsylvania Supreme Court] limited the scope of the protection to vested rights: 'It must be something more than a mere expectation, based upon an anticipated continuance of existing law. It must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another.'

*Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231, 1242 (Pa. 2008) (quoting *Lewis v. Pa. R.R. Co.*, 69 A. 821, 823 (Pa. 1908)).

Section 413(a) of the Act provides that "[a] [WCJ] . . . may, at any time, modify, reinstate, suspend, or terminate [WC benefits] . . . upon petition filed by either party . . . , upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased . . . [;]" thus, there are **no vested rights** in WC benefits. 77 P.S. § 772; *see also Whitfield*. Because Claimant does not have a vested right in WC benefits, the Remedies Clause does not apply. Accordingly, WCJ Sebastianelli properly reinstated Claimant's total disability benefits as of the date his Reinstatement Petition was filed, July 27, 2017.

Claimant next argues that Employer's Modification Petition should be denied because Act 111 does not contain sufficiently specific language to make the law retroactive. To the contrary, Act 111 replaced former Section 306(a.2) of the Act with Section 306(a.3) of the Act, which declares, in pertinent part:

> (1) **When an employe has received total disability compensation** . . . **for a period of [104] weeks, unless otherwise agreed to**, **the employe shall be required to submit to a medical examination which shall be requested by the insurer within [60] days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury**, **if any**. The degree of impairment shall be determined based upon

5

an evaluation by a physician . . . pursuant to the [AMA 'Guides,'] 6th edition ([second printing April 2009]).

(2) **If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA 'Guides,'] 6th edition ([second printing April 2009]), the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits . . . . If such determination results in an impairment rating less than [35%] impairment under the [AMA 'Guides,'] 6th edition ([second printing April 2009]), the employe shall then receive partial disability benefits . . . :** Provided, however, That no reduction shall be made until [60] days' notice of modification is given.

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power . . . , the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed.

(4) An employe may appeal the change to partial disability at any time during the [500]-week period of partial disability[:] Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA 'Guides,'] 6th edition ([second printing April 2009]).

(5) Total disability shall continue until it is adjudicated or agreed . . . that total disability has ceased or the employe's condition improves to an impairment rating that is less than [35%] of the degree of impairment defined under the [AMA 'Guides,'] 6th edition ([second printing April 2009]).

(6) Upon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of [S]ection 314 [of the Act] to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than [2] independent medical

6

examinations under this clause during a [12]-month period.

(7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA 'Guides,'] 6th edition ([second printing April 2009]), for any injury or recurrence thereof.

77 P.S. § 511.3 (emphasis added). Act 111 also added Section 3 to the Act, which provides, in relevant part:

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under [S]ection 306(a.3)(1) of the [A]ct, **an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph**. This section shall not be construed to alter the requirements of [S]ection 306(a.3) of the [A]ct.

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [A]ct, **an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph**.

Act 111, § 3(1), (2) (emphasis added).

In *Rose Corporation*, this Court explained:

The plain language of Section 3 [of Act 111] establishes a mechanism by which employers/insurers may receive credit for weeks of compensation previously paid. First, Section 3(1) [of Act 111] provides that an employer/insurer 'shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph' for purposes of determining whether the 104 weeks of total disability had been paid. This 104

7

weeks is important because, under both the former and current IRE provisions, a claimant need not attend an IRE until after the claimant receives 104 weeks of total compensation . . . . Therefore, pursuant to Section 3(1) [of Act 111], an employer/insurer will receive credit towards this 104 weeks for any weeks of total disability benefits that were previously paid prior to Act 111's enactment. Second, an employer/insurer will be given credit for any weeks of partial disability compensation paid prior to enactment of Act 111 "for the purposes of determining the total number of weeks of partial disability compensation payable under Section 306(a.3)(7) of the Act." In short, any week of partial disability previously paid will count towards the 500-week cap on such benefits.

Accordingly, Section 3 of Act 111 does not evidence clear legislative intent that the entirety of Act 111 should be given retroactive effect. Instead, it appears the General Assembly intended that employers and insurers that relied upon former Section 306(a.2) [of the Act] to their detriment by not pursuing other methods of a modification should not bear the entire burden of the provision being declared unconstitutional. Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid.

*Rose Corp.*, 238 A.3d at 561-62 (citations and footnote omitted).

While it is true that Section 306(a.3) [of the Act] essentially reenacted the IRE provisions, importantly, Section 306(a.3) [of the Act] **did not take effect** until it was enacted on October 24, 2018. Therefore, until that time, Employer could not utilize an IRE to change Claimant's disability status, even if the IRE otherwise complied with the later enacted requirements of Section 306(a.3)(1) [of the Act,] because no law permitted Employer to utilize an IRE process until Act 111 was enacted. There is no provision in Act 111 which specifically or implicitly provides for an IRE performed **prior** to Section 306(a.3) [of the Act]'s enactment to be validated afterward. Arguably, this would undermine the invalidation of IREs by the [Pennsylvania] Supreme Court in *Protz II*, whereas the approach set forth herein gives

8

> effect to the statutory language while upholding the legislative balance of claimants' and employers'/insurers' interests in light of *Protz II* and Act 111.

*Rose Corp.*, 238 A.3d at 563-64 (footnote omitted). Accordingly, WCJ Sebastianelli properly granted Employer's Modification Petition effective February 25, 2019, the date the IRE was performed pursuant to Act 111.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bernie Stoshick,                :
         Petitioner       :
                           :
         v.               :
                           :
Air Products & Chemicals, Inc. and :
Indemnity Insurance Company of   :
North America (Workers'          :
Compensation Appeal Board),    :   No. 27 C.D. 2021
         Respondents    :

## O R D E R

AND NOW, this 3rd day of February, 2022, the Workers' Compensation Appeal Board's December 21, 2020 order is affirmed.

_____

ANNE E. COVEY, Judge